# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **1.  COMANCHE NATION, OKLAHOMA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| **1.  UNITED STATES OF AMERICA;** | ) | |
| **2.  UNITED STATES DEPARTMENT** | ) | |
| **OF THE INTERIOR;** | ) | |
| **3.  GALE A. NORTON, SECRETARY OF** | ) | |
| **THE INTERIOR, in her official capacity;** | ) | |
| **4.  JAMES CASON, ASSISTANT** | ) | |
| **SECRETARY OF INTERIOR FOR** | ) | |
| **INDIAN AFFAIRS, in his official capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR INJUNCTIVE
## AND DECLARATORY RELIEF AND COSTS

### INTRODUCTION

Plaintiff Comanche Nation files this case to void the unlawful abrogation of its Treaty-reserved jurisdiction over a parcel of its reservation land originally allotted to a Comanche Tribal member.  This parcel of trust land, known as Comanche Allotment 2329, was transferred in trust by the Department of Interior for the benefit of another Indian tribe (Fort Sill Apache Tribe of Oklahoma) without the required consent of the Comanche Nation, and in fact over the Comanche Nation's express objection.  The Comanche Nation seeks a declaration and injunction against the Department of Interior's unlawful abrogation of the Comanche Nation's Treaty-reserved rights and the ongoing social and economic damage caused to the Comanche Nation as a result.

## PARTIES

1.      Plaintiff Comanche Nation, Oklahoma ("Comanche Nation"), is a sovereign, federally recognized Indian tribe, 68 Fed. Reg. 68180 (December 5, 2003), and is one of the signatories of the Treaty with the Kiowa and Comanche, October 21, 1867, 15 Stat. 581, and the Treaty with the Kiowa, Comanche and Apache, October 21, 1867, 15 Stat. 588.  The Comanche Nation exercises governmental authority pursuant to its Constitution, adopted January 9, 1967, and other Comanche Nation laws, over all Comanche Indian country, including Comanche Allotment 2329.

2.      Defendant United States of America is a sovereign nation, organized under the United States Constitution and the laws of the United States.  Defendant United States includes the various agencies and commissions organized and operating under the laws of the United States, including the United States Department of Interior and the Bureau of Indian Affairs.

3.      Defendant United States Department of the Interior ("DOI") is an administrative agency of the United States of America whose employees at the Bureau of Indian Affairs ("BIA") have overall responsibility for administering the relationship between the United States and American Indian tribes and is primarily responsible for approving the transfer of real property held in trust for the benefit of Indian allottees or Indian tribes under 25 U.S.C. § 465.

4.      Defendant Gale A. Norton is the Secretary of the Interior of the United States, and oversees and administers the operations of the DOI, including, but not limited to, the BIA.  The Secretary of Interior is, among other things, responsible for approval of trust transfers under 25 U.S.C. § 465, and "class III gaming compacts" under 25 U.S.C. § 2710 of the Indian Gaming Regulatory Act ("IGRA").  She, along with her successors in office, is sued in her official capacity.

5.      Defendant James Cason is, upon information and belief, the Acting Assistant Secretary for Indian Affairs, within the Department of Interior, and is responsible for overseeing and administering the Bureau of Indian Affairs, including the Bureau's process for taking lands into trust on behalf of Indian tribes and Indian individuals.  He, along with his successors in office, is sued in his official capacity.

## JURISDICTION AND VENUE

6.      This court has jurisdiction over this action under:

      a.  28 U.S.C. § 1331 (federal question);

      b.  28 U.S.C. § 1362 (actions brought by Indian tribes); and

      c.  28 U.S.C. § 2201 (declaratory judgment).

7.      The sovereign immunity of the United States, including its agencies and commissions, is waived for the purposes of this action by the Administrative Procedures Act ("APA") pursuant to 5 U.S.C. § 702.

8.      Venue is proper in this District under 28 U.S.C. § 1391(e)(2), since this action is brought in the District where a substantial part of the events or omissions giving rise to the claims set forth in this complaint occurred and the property that is the subject of this action is situated within the District.

## GENERAL ALLEGATIONS

9.      On October 21, 1867, the Kiowa Tribe and Comanche Nation entered into the First Treaty of Medicine Lodge Creek ("First Treaty") with the United States establishing the original boundaries of the reservation for these two tribes.  15 Stat. 581.  This First Treaty provided, among other things, that no tribe could be added to and permitted to share the Kiowa and Comanche Reservation without the consent of the Kiowa Tribe and Comanche Nation.

10.     Subsequently, on October 21, 1867, the Kiowa Tribe, Comanche Nation and Apache Tribe entered into the Second Treaty of Medicine Lodge Creek ("Second Treaty") with the United States, in which the Kiowa Tribe and Comanche Nation consented to share their reservation (established by the First Treaty) with the Apache Tribe.  15 Stat. 588.  The Second Treaty reaffirmed the boundaries of the reservation, as well as the requirement that for the United States to add any tribe to this reservation, it would first be required to obtain the consent of the three tribes.  The Kiowa, Comanche, and Apache reservation thus established will be referred to hereafter as the "KCA Reservation."

11.     The Apache Tribe that was a signatory to the Second Treaty of Medicine Lodge Creek, sometimes referred to as the Kiowa-Apache Tribe, is a distinct and separate tribe from the Fort Sill Apache Tribe of Oklahoma.

12.     By Executive Order in October of 1871, the United States unilaterally established the Fort Sill Military Reserve, setting aside 23,040 acres of the KCA Reservation for that purpose.  The result was the creation of a separate federal military enclave under the exclusive jurisdiction of the United States Army, surrounded by the KCA Reservation.

13.     Members of the Chiricahua Band of Apaches were eventually placed on the Fort Sill Military Reserve as prisoners of war of the United States.  In 1913 and 1914, these prisoners of war were removed from the Fort Sill Military Reserve.  163 of the Chiricahua prisoners relocated to New Mexico, while 76 remained in Oklahoma and were individually settled on various parcels of allotted lands within the KCA reservation.

14.     The remnant of Chiricahua Band of Apaches remaining in Oklahoma formally organized as a tribe of Indians in 1976 and became known as the Fort Sill Apache Tribe of Oklahoma ("FSA Tribe").

15.     The FSA Tribe was not granted any interest in the allotments to individual members of the Chiricahua Band of Apaches.

16.     At no point did the Kiowa Tribe, Comanche Nation, and Apache Tribe ("the three tribes") consent to share the KCA Reservation with the FSA Tribe.

17.     On October 6, 1892, the United States negotiated an agreement with the Kiowa Tribe, Comanche Nation, and Apache Tribe for the allotment of the lands of the KCA Reservation to members of the KCA Tribes ("Jerome Agreement").  The Jerome Agreement was ratified by Congress June 6, 1900 (31 Stat. L. 677, Chap. 813).  Pursuant to the Jerome Agreement, the United States acquired a substantial portion of the KCA Reservation, and allotted individual tracts of land to individual members of each of the three tribes.  These tracts were held in trust by the United States for the beneficial use of the Indian owner.  The Jerome Agreement did not involve the FSA Tribe either as a party or a beneficiary.

18.     Pursuant to the Jerome Agreement, Comanche Nation member, Charlie Kerchee, was allotted a parcel of land from the KCA reservation, identified as Comanche Allotment 2329. That parcel was placed in trust for Mr. Kerchee, with title held in trust by the United States.

19.     Comanche Allotment 2329 is a tract of land within the boundaries of the KCA reservation, but located outside the boundaries of those lands set aside for the Fort Sill Military Reserve.

20.     No FSA Tribal members were settled onto Comanche Allotment 2329.

21.     On December 4, 1986, Robert Rowell – a member of the Kiowa Tribe – purchased 0.53 acres of Comanche Allotment 2329 from an heir of the deceased original allottee on December 4, 1986, more particularly described as:

> Beginning at a point 544.5 feet South of the Northeast corner of the NW 1/4 Section 33, Township 2 North, Range 11 West of the I.M., Comanche County, Oklahoma, thence West a distance of 200 feet, thence South a distance of 115.5 feet, then East a distance of 200 feet, thence North a distance of 115.5 feet, to the point of beginning.

This parcel continued to be held in trust by the United States, now on behalf of the new owner, Mr. Rowell.

22.     At some point thereafter, Mr. Rowell began operating a bingo hall on the above-described portion of Comanche Allotment 2329 without obtaining a license from the Comanche Nation.  The Bureau of Indian Affairs ("BIA") informed Mr. Rowell that his unlicensed activity violated the Indian Gaming Regulatory Act (the "IGRA") 25 U.S.C. §2701 et seq.  He subsequently leased the property to the FSA Tribe, which, in turn, employed Mr. Rowell as bingo manager and reopened the gaming facility.

23.     The BIA took the position that in order to lawfully conduct such gaming, the FSA Tribe was required to obtain a license from the Comanche Nation because the gaming facility was located on an original Comanche allotment and thus was within the Comanche Nation's jurisdiction.

24.     The FSA Tribe and its officials have never sought or obtained a license from the Comanche Nation to conduct gaming on the above-described portion of Comanche Allotment 2329.

25.     In late 1992 and early 1993, the FSA Tribe attempted to purchase the above-described portion of Comanche Allotment 2329, and requested BIA's approval.  The BIA took the position that it was required by regulation to give notice to the Comanche Nation and solicit the Comanche Nation's position on the proposed transfer.

26.     On August 16, 1993, the Comanche Nation objected to the FSA Tribe's acquisition of the above-described portion of Comanche Allotment 2329.   Based on the Comanche Nation's refusal to consent to the transfer, the BIA denied the FSA Tribe's request.

27.     The FSA Tribe did not appeal the BIA's decision to deny the transfer of Comanche Allotment 2329.

28.     In May 1995, the FSA Tribe reinitiated its request to the BIA to acquire the allotment in trust for gaming and other economic development purposes.   The BIA first denied the reinitiated request based upon its prior determinations.   The BIA subsequently reversed its position, when then-Assistant Secretary of Indian Affairs, Ada Deer, directed the BIA to conduct a new review of the FSA Tribe's request without soliciting the consent of the Comanche Nation.

29.     The Comanche Nation did not receive notice of the aforementioned reinitiated application for transfer of trust property or the review and approval process.   The Comanche Nation's comments on the jurisdictional issues were not solicited, and no public notice was given by the Department of Interior or the FSA Tribe.

30.     On April 2, 1999, the Assistant Secretary approved the previously rejected request and transferred the above-described portion of Comanche Allotment 2329 through a deed approved by the Department of Interior to the FSA Tribe despite the lack of notice and comment, and despite the objection previously lodged by the Comanche Nation.   This was a final agency action for purposes of judicial review under the Administrative Procedures Act, 5 U.S.C. § 704, pursuant to 25 C.F.R. § 2.6(c).

31.     The analysis supporting the Assistant Secretary's decision was inconsistent with the Agency's previous analysis and position on this specific issue.   Moreover, the Assistant Secretary's analysis and decision were based on an interpretation of the agreements and treaties

involving the KCA Tribes and the FSA Tribe.  At no time had Congress ever granted the DOI or the BIA the discretion to administer these treaties and agreements.  The Agency's decision is, therefore, not entitled to any deference.

32.     At no time before, during, or since this transfer has the Comanche Nation taken any action to relinquish, or consent to the diminishment of, its jurisdiction over Allotment 2329. At no time since the First Treaty of Medicine Lodge Creek has the parcel at issue been removed from the trust ownership of the United States.

33.     The Indian Gaming Regulatory Act ("IGRA") places authority to regulate class I and class II gaming with the tribe which has jurisdiction over such Indian lands pursuant to 25 U.S.C. §§ 2710(a) and (b).  Any such gaming on Indian lands within the jurisdiction of the Comanche Nation must be licensed and conducted in accordance with Comanche Nation law.

34.     IGRA also requires that any class III gaming within Comanche Nation jurisdiction must be conducted in conformance with Comanche law pursuant to 25 U.S.C. § 2710(d).  On December 2, 2000, the Comanche Nation of Oklahoma, through its Business Committee, passed Resolution 102-00, amending Section 2(j) of the Comanche Nation's Gaming Ordinance to clarify that the Tribe's regulatory jurisdiction over gaming extended to "all lands originally allotted to the Comanche Nation or its members that are held in trust by the United States, regardless of the tribal affiliation of the owner (whether an individual or a tribe), unless the Comanche Nation has expressly authorized in writing the relinquishment of such land from its jurisdiction."

35.     The proposed amendment to Section 2(j) of the Comanche Nation Gaming Ordinance is consistent with the Treaty-reserved rights of the Comanche Nation concerning jurisdiction over allotted lands within the KCA Reservation.

36.     The National Indian Gaming Commission ("NIGC"), the federal agency delegated authority to review and approve or disapprove tribal class III gaming ordinances, 25 U.S.C. § 2710, disapproved the proposed amendment to Section 2(j) of the Comanche Nation Gaming Ordinance, expressly basing this disapproval on the DOI's and BIA's decision to take the above-described portion of Comanche Allotment 2329 in trust for the FSA Tribe.

37.     Plaintiff Comanche Nation is informed and believes, and upon that basis alleges that Defendants, their deputies and subordinates, and persons working in concert with them, continue to authorize, approve, and allow other activities on the above-described portion of Comanche Allotment 2329 without the required consent, approval or license of the Comanche Nation.

38.     Plaintiff Comanche Nation is informed and believes, and upon that basis alleges that the DOI is in the process of reviewing a class III gaming compact between the FSA Tribe and the State of Oklahoma, pursuant to 25 U.S.C. § 2701 et seq., for gaming to be conducted on the above-described portion of Comanche Allotment 2329 without the required consent, approval or license of the Comanche Nation.

39.     A criminal action naming two employees of the FSA Tribe as defendants was filed in the Court of Indian Offenses ("CFR Court") for the Anadarko Agency, BIA (convened as The Comanche Tribal Court) pursuant to 25 CFR §11.449, for engaging in the sale of tobacco products on the above-described portion of Comanche Allotment 2329 in violation of the Comanche Nation Tax Code.  Comanche Nation of Oklahoma v. Tuaila and Pewardy, Case No. CRM—00—A02.

40.     At a December 10, 2001, hearing in Comanche Nation of Oklahoma v. Tuaila and Pewardy, Case No. CRM—00—A02, the CFR Court Judge ordered the criminal matter to be

stayed pending resolution of the question of jurisdiction, to be determined in a civil matter that the Court instructed the Comanche Nation to file.

41.     The Comanche Nation complied with the Court's order and filed the court-recommended civil action.

42.     The civil case, titled <u>Comanche Nation of Oklahoma v. Darrow, et al.,</u> is still pending in the CFR Court.

43.     Plaintiff Comanche Nation is informed and believes, and upon that basis alleges that Defendants Secretary of the Interior and Assistant Secretary for Indian Affairs, their deputies and subordinates, and persons working in concert with them, intend and will continue to accept trust lands allotted to Comanche Tribal members within the KCA Reservation in trust for the FSA Tribe without providing notice to, and without obtaining consent from, the Comanche Nation.

## FIRST CLAIM FOR RELIEF

### TRANSFER OF COMANCHE ALLOTMENT 2329 TO THE FSA TRIBE WITHOUT THE COMANCHE NATION'S CONSENT VIOLATED COMANCHE NATION'S TREATY RIGHTS

44.     Plaintiff re-alleges each of the allegations set forth in Paragraphs 1-43 above, and by this reference incorporates each such allegation herein as if set forth in full.

45.     The First and Second Treaties of Medicine Lodge Creek (October 21, 1867) reserved to the Kiowa Tribe, Comanche Nation and Apache Tribe the KCA Reservation, and specifically provided that the reservation would be for their exclusive use and occupation unless all three tribes consented to another tribe or tribes sharing the reservation.  None of these three tribes has since consented to share or admit upon the KCA reservation the FSA Tribe or any other tribe.

46.     Comanche Allotment 2329 was allotted from the KCA Reservation to a Comanche Tribal member.  It was not one of the Kiowa, Comanche, or Apache allotments purchased by the United States for one of the FSA Tribal members.

47.     Under the First and Second Treaties of Medicine Lodge Creek, transferring Comanche Allotment 2329, or any portion thereof, to the FSA Tribe would require the consent of the Comanche Nation (along with the Kiowa and the Apache Tribes).

48.     Congress has never abrogated this treaty-reserved right of the three tribes to consent or deny consent to sharing the KCA reservation with another tribe.

49.     The Comanche Nation did not consent, and in fact expressly objected, to the transfer of the above-described portion of Comanche Allotment 2329 to the FSA Tribe.

50.     The Assistant Secretary of Indian Affairs nonetheless authorized and approved the transfer of the above-described portion of Comanche Allotment 2329 to the FSA Tribe, and title was transferred through a deed approved by the DOI on April 2, 1999.

51.     An actual controversy exists between the Comanche Nation and Defendants in that the Comanche Nation contends that Defendants lacked authority to abrogate the treaty rights of the Comanche Nation by permitting the FSA Tribe to acquire trust title to the above-described portion of Comanche Allotment 2329 without the consent of the Comanche Nation.

52.     The actions of Defendants abrogated the treaty rights of the Comanche Nation pursuant to the First and Second Treaties of Medicine Lodge, and as such were arbitrary, capricious and contrary to law in violation of the Administrative Procedures Act, 5 U.S.C. §§ 702 – 706.

53.     Plaintiff Comanche Nation is informed and believes, and upon that basis alleges that unless restrained and enjoined by this Court, Defendants, their deputies and subordinates,

and persons working in concert with them, will continue to act in excess of their authority and in derogation of the Comanche Nation's sovereignty and Treaty-reserved rights regarding the above-described portion of Comanche Allotment 2329, by, among other things, approving leases for commercial and economic development on this parcel and approving a class III gaming compact under the IGRA for gaming on this parcel.

54.     The above-described actions of Defendants deprive the Comanche Nation of its ability to tax, regulate, and otherwise exercise jurisdiction over activities on that land resulting in immediate and substantive economic and social harm to the Comanche Nation.

### SECOND CLAIM FOR RELIEF

### TRANSFER OF COMANCHE ALLOTMENT 2329 TO FSA TRIBE WITHOUT COMANCHE NATION'S CONSENT VIOLATED 25 C.F.R. § 151.8

55.     Plaintiff re-alleges each of the allegations set forth in Paragraphs 1- 54 above, and by this reference incorporates each such allegation herein as if set forth in full.

56.     The regulations regarding acquisition of trust property for an Indian tribe require that the DOI provide notice to, and obtain the consent from, an Indian tribe when one tribe seeks to have land taken into trust within the boundaries of another tribe's reservation pursuant to 25 C.F.R. § 151.8.

57.     The KCA Reservation is the reservation of the Kiowa, Comanche, and Apache Tribes and it is not the reservation of the FSA Tribe.

58.     The FSA Tribe is seeking to obtain trust title to trust land on a reservation that is not its own.  If the FSA Tribe seeks to obtain trust land within the KCA Reservation, the Kiowa, Comanche and Apache Tribes must be given notice and an opportunity to comment, and if any of these tribes does not consent, the DOI cannot authorize and approve the trust transfer.

59.     Comanche Allotment 2329 is within the KCA Reservation, and was land originally allotted to a Comanche Tribal member.

60.     The Comanche Nation was originally provided notice and an opportunity to comment on the FSA Tribe's application to acquire the above-described portion of Comanche Allotment 2329 in trust.  The Comanche Nation expressed its objection to the acquisition, and the DOI, based on that objection, originally denied the application.

61.     Subsequently, at the direction of the Assistant Secretary for Indian Affairs, the FSA Tribe was invited to re-submit its application for transfer of title to Comanche Allotment 2329.

62.     The Comanche Nation was not provided with the notice and opportunity to comment, required under 25 C.F.R. § 151.8, on the second application by FSA Tribe for transfer of title to a portion of Comanche Allotment 2329.  The Comanche Nation did not consent to the acquisition.

63.     Nonetheless, the Assistant Secretary for Indian Affairs authorized and approved the acquisition, and title to the above-described portion of Comanche Allotment 2329 was transferred to the FSA Tribe through a deed approved by the DOI on April 2, 1999.

64.     An actual controversy exists between the Comanche Nation and Defendants in that the Comanche Nation contends that Defendants lacked authority to approve the FSA Tribe's application to acquire lands in trust on the KCA Reservation without providing notice to, and obtaining the consent from, the Comanche Nation, as required by 25 C.F.R. § 151.8.

65.     The actions of the Defendants violated 25 C.F.R. § 151.8, and, as such, were arbitrary, capricious and contrary to law in violation of the Administrative Procedures Act, 5 U.S.C. §§ 702 – 706.

66.     Plaintiff Comanche Nation is informed and believes, and upon that basis alleges that unless restrained and enjoined by this Court, Defendants, their deputies and subordinates, and persons working in concert with them, will continue to act in excess of their authority under federal laws and regulations, and in derogation of the Comanche Nation's sovereignty and Treaty-reserved rights, regarding the above-described portion of Comanche Allotment 2329, by, among other things, approving commercial and economic development on this parcel and approving a class III gaming compact under the IGRA for gaming on this parcel.

67.     The above-described actions of Defendants deprive the Comanche Nation of its ability to tax, regulate, and otherwise exercise jurisdiction over activities on that land resulting in immediate and substantive economic and social harm to the Comanche Nation.

## THIRD CLAIM FOR RELIEF

**ABROGATION OF COMANCHE JURISDICTION OVER COMANCHE ALLOTMENT 2329 VIOLATES COMANCHE TREATY RIGHTS**

68.     Plaintiff re-alleges each of the allegations set forth in Paragraphs 1- 67 above, and by this reference incorporates each such allegation herein as if set forth in full, and asserts this Third Claim for Relief in the alternative to the First and Second Claims for Relief.

69.     Under well-established federal case law, Indian tribes retain criminal and civil jurisdiction over lands allotted to individual tribal members and held in trust by the United States.

70.     An Indian tribe's jurisdiction over such individually-allotted lands continues for so long as the land remains in trust status, no matter who subsequently acquires beneficial title to the parcel, and such continuing jurisdiction has been long-recognized by the United States Department of Interior and the BIA.  Such jurisdiction is an incident of the tribe's treaty-reserved rights.

71.     Comanche Allotment 2329 was originally part of the KCA Reservation, and was allotted in trust to a member of the Comanche Nation.  It has continued in trust status ever since it was individually-allotted.  Pursuant to the First and Second Treaties of Medicine Lodge, the Comanche Nation retains criminal and civil jurisdiction over Comanche Allotment 2329.

72.     The Comanche Nation has never consented to a diminishment of its jurisdiction over that parcel, and Congress has not abrogated the Tribe's treaty-derived jurisdictional right.

73.     Through their actions authorizing and allowing the FSA Tribe to conduct gaming and other activities on the above-described portion of Comanche Allotment 2329 in violation of Comanche Nation law and without Comanche Nation authorization, Defendants abrogated the Comanche Nation's criminal and civil jurisdiction over the above-described portion of Comanche Allotment 2329.  Thus, even if the actions of Defendants in accepting the parcel at issue in trust on behalf of the FSA Tribe cannot be challenged, any abrogation of Comanche Nation jurisdiction over that parcel, independent of the transfer, is unlawful.

74.     An actual controversy exists between the Comanche Nation and Defendants in that the Comanche Nation contends that Defendants lacked authority to permit, and to continue to allow, the FSA Tribe to conduct activities – including but not limited to gaming activities – on the above-described portion of Comanche Allotment 2329 without complying with the relevant provisions of Comanche Nation law.

75.     The actions of the Defendants have and continue to abrogate the treaty rights of the Comanche Nation pursuant to the First and Second Treaties of Medicine Lodge by diminishing the Comanche Nation's jurisdiction over the above-described portion of Comanche Allotment 2329, and as such are arbitrary, capricious and contrary to law in violation of the Administrative Procedures Act, 5 U.S.C. §§ 702 – 706.

76.     Plaintiff Comanche Nation is informed and believes, and upon that basis alleges that unless restrained and enjoined by this Court, Defendants, their deputies and subordinates, and persons working in concert with them, will continue to act in excess of their authority and in derogation of the Comanche Nation's sovereignty and Treaty-reserved rights regarding the above-described portion of Comanche Allotment 2329, by, among other things, approving commercial and economic development on this parcel and approving a class III gaming compact under the IGRA for gaming on this parcel.

77.     The above-described actions of Defendants deprive the Comanche Nation of its ability to tax, regulate, and otherwise exercise jurisdiction over activities on that land resulting in immediate and substantive economic and social harm to the Comanche Nation.

## FOURTH CLAIM FOR RELIEF

**DEFENDANTS INTEND TO ACCEPT OTHER COMANCHE ALLOTMENTS IN TRUST FOR FSA TRIBE IN VIOLATION THE COMANCHE NATION'S TREATY RIGHTS AND ITS RIGHTS UNDER 25 C.F.R. § 151.8**

78.     Plaintiff re-alleges each of the allegations set forth in Paragraphs 1-77 above, and by this reference incorporates each such allegation herein as if set forth in full.

79.     Plaintiff Comanche Nation is informed and believes, and upon that basis alleges that Defendants Secretary of the Interior and Assistant Secretary for Indian Affairs, their deputies and subordinates, and persons working in concert with them, intend to and will continue to accept trust lands allotted to Comanche Tribal members within the KCA Reservation in trust for the FSA Tribe without providing notice to, and without obtaining the consent from, the Comanche Nation.

80.     On December 21, 2000, the Superintendent of the Anadarko Agency for the BIA notified the Comanche Nation by letter that a negotiated sale by the FSA Tribe with the Kerchee

family for two additional parcels of land within the jurisdiction of the Comanche Nation had been approved by the Agency. The Agency's approval concerned a distinct parcel adjacent to the parcel at issue, also known as Comanche Allotment 2329, containing approximately 39 acres and another parcel of an original Comanche Allotment 2331 (originally allotted to Kiyou) containing approximately 25 acres. The Agency's approval permitted the FSA Tribe to conclude negotiation of terms for the transfer of land held in trust from the respective allottees to the FSA Tribe. If such terms were agreeable and complied with federal regulations, then the DOI – BIA would conclude the transactions.

81.     The above-described notice specifically declared that the Agency had determined that consent of the Comanche Nation was not required pursuant to 25 C.F.R. § 151.8.

82.     The above described notice conceded that such acquisition by FSA Tribe of two additional Comanche allotments may create a jurisdictional conflict between the two tribes.

83.     An actual controversy exists between the Comanche Nation and Defendants in that the Comanche Nation contends that Defendants Secretary of the Interior and Assistant Secretary for Indian Affairs lack authority to approve the FSA Tribe's applications to acquire lands in trust on the KCA Reservation without providing notice to and obtaining the consent of the Comanche Nation, as required by the First and Second Treaties of Medicine Lodge Creek and 25 C.F.R. § 151.8.

84.     The intended actions of the Assistant Secretary of Indian Affairs and the Department of Interior violate the rights of the Comanche Nation pursuant to the First and Second Treaties of Medicine Lodge Creek as well as 25 C.F.R. § 151.8, and as such are arbitrary, capricious and contrary to law in violation of the Administrative Procedures Act, 5 U.S.C. §§ 702 – 706.

85.     Plaintiff Comanche Nation is informed and believes, and upon that basis alleges that unless restrained and enjoined by this Court, Defendants Secretary of the Interior and Assistant Secretary for Indian Affairs, their deputies and subordinates, and persons working in concert with them, will continue to act in excess of their authority and in derogation of the Comanche Nation's Treaty-reserved sovereignty, and its regulatory process and consent rights regarding other Comanche Allotments within the KCA Reservation.

86.     The above-described action of Defendants deprives the Comanche Nation of its ability to refuse to consent to the FSA Tribe or any other tribe obtaining lands held in trust within the KCA Reservation.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFF COMANCHE NATION PRAYS AS FOLLOWS:**

Pursuant to its First and/or Second Claims for Relief:

1.     That the Court issue a judgment in favor of Plaintiff and against Defendants declaring that the transfer of the above-described portion of Comanche Allotment 2329 to the FSA Tribe is invalid and without affect, and that the parcel at issue remains held in trust by the United States for the prior owner;

2.     That the Court issue a judgment in favor of Plaintiff and against Defendants that preliminarily and permanently enjoins the United States, the Secretary of Interior and the Assistant Secretary for Indian Affairs, and their successors in office, from accepting and holding the above-described portion of Comanche Allotment 2329 in trust for the FSA Tribe without consent of the Comanche Nation;

3.     That the Court issue a judgment in favor of Plaintiff and against Defendants that preliminarily and permanently enjoins the United States, the Secretary of Interior, and the

Assistant Secretary for Indian Affairs, and their successors in office, from approving any leases of the above-described portion of Comanche Allotment 2329 by the FSA Tribe without the consent of the Comanche Nation;

4.     That the Court issue a judgment in favor of Plaintiff and against Defendants that preliminarily and permanently enjoins the United States, the Secretary of Interior, and the Assistant Secretary for Indian Affairs, and their successors in office, from approving any class III gaming compact under the IGRA for gaming on the above-described portion of Comanche Allotment 2329 unless such gaming is to be conducted with the consent of the Comanche Nation and consistent with the relevant provisions of Comanche Nation law;

5.     That the Court issue a judgment in favor of Plaintiff and against Defendants that preliminarily and permanently enjoins the United States, the Secretary of Interior and the Assistant Secretary for Indian Affairs, and their successors in office, from approving or allowing any activities on the above-described portion of Comanche Allotment 2329, including class III gaming, that do not comply with the relevant provisions of Comanche Nation law;

6.     That the Court issue a judgment in favor of Plaintiff and against Defendants declaring that the above-described portion of Comanche Allotment 2329 may not be transferred to any other tribe aside from the Kiowa and the Apache Tribes without the consent of the Comanche Nation, and preliminarily and permanently enjoining the United States, the Secretary of Interior and the Assistant Secretary for Indian Affairs, and their successors in office from holding or accepting the above-described portion of Comanche Allotment 2329 in trust for any other tribe unless and until the Comanche Nation consents to such a transfer;

7.     That the Court issue a judgment in favor of Plaintiff and against Defendants declaring that the Comanche Nation retains jurisdiction over the above-described portion of

Comanche Allotment 2329 as part of the Comanche Nation's Indian country, that Comanche Nation law continues to have full force and effect with respect to activities undertaken on the above-described portion of Comanche Allotment 2329, and that Defendants United States', Secretary of Interior's, and Assistant Secretary of Indian Affairs' approval of or acquiescence in approval of or acquiescence in any activities conducted on the above-described portion of Comanche Allotment 2329 that are inconsistent with the relevant provisions of Comanche Nation law is unlawful.

Pursuant to its Third Claim for Relief, and in the alternative to its First and Second Claims for Relief:

8. That the Court issue a judgment in favor of Plaintiff and against Defendants declaring, notwithstanding the transfer of the above-described portion of Comanche Allotment 2329 to the FSA Tribe, that the Comanche Nation retains jurisdiction over the above-described portion of Comanche Allotment 2329 as part of the Comanche Nation's Indian country, and that Comanche Nation law continues to have full force and effect with respect to activities undertaken on the above-described portion of Comanche Allotment 2329;

9. That the Court issue a judgment in favor of Plaintiff and against Defendants that preliminarily and permanently enjoins the United States, the Secretary of Interior, and the Assistant Secretary for Indian Affairs, and their successors in office, from approving any leases of the above-described portion of Comanche Allotment 2329 without the consent of the Comanche Nation;

10. That the Court issue a judgment in favor of Plaintiff and against Defendants that preliminarily and permanently enjoins the United States, the Secretary of Interior, and the Assistant Secretary for Indian Affairs, and their successors in office, from approving any class III

gaming compact under the IGRA for gaming on the above-described portion of Comanche Allotment 2329 unless such gaming is to be conducted with the consent of the Comanche Nation and consistent with the relevant provisions of Comanche Nation law;

11.    That the Court issue a judgment in favor of Plaintiff and against Defendants that preliminarily and permanently enjoins the United States, the Secretary of Interior and the Assistant Secretary for Indian Affairs, and their successors in office, from approving or allowing any activities, including class III gaming, on the above-described portion of Comanche Allotment 2329 that do not comply with the relevant provisions of Comanche Nation law;

12.    That the Court issue a judgment in favor of Plaintiff and against Defendants declaring that Defendants United States', Secretary of Interior's, and Assistant Secretary of Indian Affairs' approval of or acquiescence in any activities conducted on the above-described portion of Comanche Allotment 2329 that are inconsistent with the relevant provisions of Comanche Nation law is unlawful.

Pursuant to its Fourth Claim for Relief:

13.    That the Court issue a judgment in favor of Plaintiff and against Defendants declaring that the transfer of any trust lands originally allotted to Comanche Tribal members may not be transferred in trust to the FSA Tribe or any other tribe outside the KCA reservation without providing notice to and obtaining the consent of the Comanche Nation;

14.    That the Court issue a judgment in favor of Plaintiff and against Defendants that preliminarily and permanently enjoins the United States, the Secretary of Interior and the Assistant Secretary for Indian Affairs, and their successors in office, from accepting and holding the transfer of any trust lands originally allotted to Comanche Tribal members in trust for the

FSA Tribe or any other tribe outside the KCA reservation without providing notice to and obtaining the consent of the Comanche Nation.

Pursuant to all Four Claims for Relief:

15. That the Court award Plaintiff costs of suit.

16. That the Court grant Plaintiff such other relief that this Court deems just and proper.

Respectfully submitted this 23rd day of March, 2005:

s/ William R. Norman, Jr.
Bar Number: OK #14919
Attorney for Plaintiff
Hobbs, Straus, Dean & Walker, LLP
117 Park Ave., Second Floor
Oklahoma City, OK 73102
Telephone: 405-602-9425
Fax: 405-602-9426
Email Address: william@hsdwok.com