**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| COMANCHE NATION, OKLAHOMA )<br>)<br>    Plaintiff,                                       )<br>                                                            )<br>-vs-                                                      )<br>                                                            )<br>UNITED STATES OF AMERICA, et al.  )<br>                                                            )<br>    Defendants.                                  ) | CIV 05-328-F |

**RESPONSE TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Defendant, by and through the undersigned counsel, responds as follows to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

### BACKGROUND

1. The Chiricahua came as Prisoners of War to the Fort Sill Military Reservation in 1894, and were eventually located on territory added to Fort Sill from lands of the KCA Reservation by means of Executive Orders in 1897 and 1901. See <u>Fort Sill Apache Tribe of Oklahoma, et al. v. United States</u>, 41 Ind. Cl. Comm. 37 (1977). The Indian Claims Commission held title to these lands to have vested in the Chiricahua Apache, <u>id.</u> at 70-71, title which gave rise to a compensable interest not extinguished until 1912, when Congress determined to release and remove the Chiricahua. <u>Ibid.</u>

2. Some twelve years before the Chiricahua interest was extinguished, Congress acted to abolish the KCA Reservation by means of the Act of June 6, 1900 (Act), 31 Stat. 672. Article I of the Act provided in part as follows:

> the said Comanche, Kiowa, and Apache Indians hereby cede, convey, transfer relinquish, and surrender, forever and absolutely, without any reservation whatsoever, express or implied, all their claim, title, and interest, of every kind and character, in and to the lands embraced in the [the Treaty of Medicine Lodge] ....

31 Stat. 672, 6.

Article VI of the Act went on to provide in consideration for the cessions of territory and relinquishment of title, claim, and interest in and to the lands as aforesaid, the United States agrees to pay to the Comanche, Kiowa, and Apache tribes of Indians, in the Indian territory, the sum of two million (2,000,000) dollars ... Ibid.

3. On March 29, 1996, Robert T. Anderson, the Department of Interior's Associate Solicitor for Indian Affairs found consent to a trust acquisition for the benefit of the Fort Sill Apache Tribe pursuant to 25 C.F.R. '151.8 to be unnecessary:   He held:

> Each of the tribes, including the Fort Sill Apache Tribe has jurisdiction over some area of the [former] reservation....  Any trust acquisition by the KCA Tribes or the Fort Sill Apache Tribe on the KCA reservation is not on another tribe's reservation.  Accordingly, there is no need for the four tribes to seek consent of all the others in order to acquire land in trust within the former KCA reservation.  As with any tribally-owned trust land, jurisdiction over land that is transferred to any of the four tribes rests with the acquiring Tribe.... (footnotes omitted).

4. On March 11, 1999, the Assistant Secretary of Indian Affairs approved the request of the Fort Sill Apache Tribe of Oklahoma for Trust Acquisition of .53 Acres for Gaming.

5. On April 2, 1999, the Assistant Secretary transferred the subject property to trust status on behalf of the Fort Sill Apache.  It is this a final agency action which is the subject of the plaintiff's complaint.

6. Since April 1999, the Fort Sill Apache Tribe has engaged in commercial activity in its trust territory.

7. In April 2000 the Comanche Nation brought criminal prosecutions in the Court of Indian Offenses for the Comanche Tribe against two employees of the Fort Sill Apache Casino for alleged violation of Comanche law, namely, certain retail licensing provisions of the Comanche Tribe's General Revenue and Taxation Act of 1995 covering the sale of tobacco products.

8. In December 2001, the Court of Indian Offenses, Luhan, J., stayed the criminal proceedings while granting the Comanche Tribe leave to bring a civil action as appropriate.

9. On January 10, 2001 the Comanche Tribe filed suit in the Court of Indian Offenses for the Comanche Tribe against the Chairwoman and other officials of the FSA Tribe in their representative capacities, seeking declaratory and injunctive relief which would serve to impose the Comanche Tribe's Gaming Ordinance and its General Revenue and Taxation Act of 1995_ upon the FSA Tribe and the gaming and smokeshop enterprises operating in FSA trust territory.

10. On September 6, 2002, Judge Philip Luhan entered an Order dismissing the lawsuit on the ground that Athis Court lacks authority to override a decision of the Bureau of Indian Affairs, and thus, lacks authority to entertain the instant action.

11. The Comanche Nation appealed. Following oral argument in March 2003, the Appellate Division reversed and remanded to the Court of Indian Offenses for consideration of the merits of the parties' contentions, with instructions that Judge Luhan recuse.

12. The matter was assigned the Honorable Stephen L. Parker, who had available the voluminous documentary record and pleadings developed and filed by the parties. He dismissed the case on the merits. That matter is now on appeal.

**PROPOSITION I**

THE FORT SILL APACHE TRIBE OF OKLAHOMA
IS AN INDISPENSABLE PARTY
UNDER FED. R. CIV. P. 19

This action seeks to delay the implementation of a Compact action of the Fort Sill Apache Tribe. Clearly, this party has an interest in the validity of this Compact, and this interest would be directly affected by the relief which Plaintiff seeks. ***Kickapoo Tribe v. Babbitt***, 827 F.Supp. 37, 41 (D.D.C. 1993); ***Kansas v. Finney***, 836 P.2d 1169, 1176, 1183 (KS 1992)  As a necessary party, the Ft. Sill Apache would normally have been joined in this action. Fed. R.Civ. P. 19.

As a party to the compact, which is contractual in nature, the Tribe's interests will clearly

be harmed if the compact is delayed. *See Pueblo of Santa Ana v. Kelly*, 104 F. 3d 1546, 1556 (10th Cir. 1997) (IGRA compact is a form of contract; *Enterprise Mgt. Consultants, Inc. v. United States*, 883 F. 2d 890, 893 (10th Cir. 1989) (Indian tribe is a necessary party to an action seeking to validate a contract with the tribe). There is Tenth Circuit authority for the proposition that a party to a contract is almost always an indispensable party to a lawsuit attacking the validity of the contract*.* *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 540 & n. 5 (10th Cir. 1987) (citing Ninth Circuit opinion suggesting a rule that a party to a contract is per se indispensable to litigation affecting it, *Lomayaktewa v. Hathaway*, 520 F.2nd 1324, 1325 (9th Cir. 1975)). In addition, Indian tribes have routinely been deemed necessary parties to actions touching upon their property and contractual interests. *Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992) (tribe is necessary party to challenge the constitutionality of a federal act putting land in trust for the tribe); *Enterprise Management Consultants v. Untied States, ex rel, Hodel,* 883 F.2d 890 (10th Cir. 1989) (tribe is an indispensable party to litigate the approval of a bing management contract to which it was a party); *McClendon v. United States*, 885 F. 2d 627 (9th Cir. 1989) (tribe is necessary party to an action to enforce a lease agreement signed by the tribe).

In *Davis v. United States*, 192 F. 3d 951, 959 (10th Cir. 1999), the Tenth Circuit directed that the trial court should articulate factual findings on the issues of whether the suit can proceed in equity and good conscience in the absence of the Tribe pursuant to Rule 19(b).

Rule 19(b) instructs the court to consider four factors. *See, 3A Moore's Federal Practice* 19.07[0], pp. 128-29. These factors are not rigid technical tests, but rather guides to the overarching equity and good conscience determination. *Cloverleaf Standardbred Owners v. National Bank*, 699 F.2d 1274, 1279 n. 11 (D.C. Cir. 1983). The four factors include: 1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; 2) the extent to which, by protective provisions in the judgment by the shaping of relief, or other measures the prejudice can be lessened or avoided; 3) whether a judgment rendered in the person's absence will be adequate; 4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-

joinder. ***Provident Tradesmen's Bank and Trust Co. v. Patterson***, 390 U.S. 102, 109-11 (1968). Here, the application of the four factors prescribed by Rule 19(b) in determining indispensability demonstrate that this action must be dismissed for non-joinder.

## PROPOSITION II

### THIS COURT SHOULD NOT ENJOIN A CABINET SECRETARY FROM PERFORMING A STATUTORILY MANDATED ACT

The Indian Gaming Regulatory Act gives authority to the Secretary to approve a compact. Specifically:

> The Secretary is authorized to approve any Tribal-State compact entered into between an Indian tribe and a State governing gaming on Indian lands of such Indian tribe.

25 U.S.C. § 2710(d)(8)(A) (emphasis added). AThe Secretary may disapprove a compact described in subparagraph (A) only if such compact violates -

(1) any provision of this Act.

(2) any other provision of federal law that does not relate to jurisdiction over gaming on Indian lands, or,

(3) the trust obligations of the United States to Indians.

25 U.S.C. 2710(d)(8)(B) (emphasis added).

The statute gives the Secretary only 45 days to decide whether to approve or to disapprove. It provides a very specific remedy if the Secretary does not act within that time period. As contrasted with the may language used to allow the Secretary to disapprove a compact, if the Secretary does **not** act within 45 days, the compact shall be considered to have been approved by the Secretary  25 U.S.C. 2710 (d)(8)(D).

The compact shall be considered to have been approved 25 U.S.C. 2710(d)(8)(C) to the extent it is consistent with IGRA, and the Secretary shall publish in the Federal Register notice that the compact is considered to be approved, 25 U.S.C. 2710(d)(8)(D), thus causing the compact to take effect. 25 U.S.C. 2710(d)(3)(B). Congress imposed an absolute forty-five day deadline after which it is deemed approved even if the compact or provisions are legally invalid - - for lack of rulemaking or otherwise. ***Kickapoo Tribe***, 827 F.Supp. at 43, 44; *see also* ***Mescalero Apache Tribe v. State of New Mexico***, 131 F.3d 1379, 1382 at n. 2 (10th Cir. 1997).

Congress has spoken in the statute. The Secretary is to publish the notice of approval in the Federal Register and the compact shall take effect.25 U.S.C. 2710 (d)(3)(B) and 2710 (d)(7)(C). This Court should not issue an injunction that would prevent this compact from taking effect.

## PROPOSITION III

## THE PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS SINCE THE UNDERLYING CAUSE OF ACTION IS NOT TIMELY FILED

The plaintiffs cite the Administrative Procedure Act, 5 U.S.C. " 702-703 (APA), as an alleged basis for jurisdiction. The agency action that plaintiffs assert is subject to review by federal court pursuant to the APA is the Superintendent's decision regarding the placement of the disputed property in trust.

Under 25 C.F.R.2.6(a) the Department of Interior has by regulation expressly required that its administrative remedies be exhausted before a decision becomes final and one may seek judicial review. The authority to prescribe by regulation the procedures to be followed in order to exhaust one's administrative remedies is well settled. *See,* ***United States v. Consolidated Mines & Smelting Co. Ltd.***, 455 F.2d 432, 452 (9th Cir. 1971) (an agency "may by rule require that all remedies be exhausted before the applicant may seek a review in the court*");* ***Cities Service Gas Company v. Federal Power Commission****,* 255 F.2d 860, 863 (10th Cir. 1958), cert. denied sub nom., ***Magnolia***

*petroleum Co. v. Cities Service Gas Co.*, 358 U.S. 837 (1958).

It is well established that one seeking to overturn the actions of a federal agency must exhaust administrative remedies before seeking redress in the federal courts. ***McKart v. United States***, 395 U.S. 185, 193 (1969) ("no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."); ***Mullins Coal Co. v. Clark***, 759 F.2d 1142, 1145 (4th Cir. 1985) ("Exhaustion allows the...agency to act within the sphere of its special competence, to apply its expertise, and to correct its own errors, and it creates a reasonable division of labor between agency and the court.").

## CONCLUSION

For the above stated reasons, Defendant asks that Plaintiff's request for Temporary Restraining Order and for Preliminary Injunction be denied.

Respectfully submitted,

ROBERT McCAMBELL
United States Attorney

/s/ Steven K. Mullins
Steven K. Mullins, OBA # 6504
Assistant United States Attorney
United States Department of Justice
Western District of Oklahoma
210 W. Park Ave., Ste. 400
Oklahoma City, OK 73102

### CERTIFICATE OF SERVICE

__X__  I hereby certify that a true copy of this pleading was electronically transmitted to the Clerk of the District Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to these parties and counsel registered on ECF:

_____ I hereby certify that a true copy of this pleading was mailed, postage prepaid, on _____, 2005, to each of the parties or counsel as indicated below, who are not registered on the Court's ECF system:

NONE

/s/ Steven K. Mullins
Assistant U.S. Attorney