IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

COMANCHE NATION, OKLAHOMA,   )
                                   )
           Plaintiff,       )
                                   )
-vs-                               )
                                 )    Case No. CIV-05-328-F
UNITED STATES OF AMERICA,     )
et al.,                       )
                                 )
          Defendants.    )
                                 )

## O R D E R

On Friday, May 6, 2005, the court held a hearing on plaintiff, Comanche Nation's Motion for Temporary Restraining Order and Preliminary Injunction Staying Agency Action Pending Review, filed March 31, 2005 (docket entry no. 8), wherein plaintiff requested a temporary restraining order and preliminary injunction enjoining defendants from approving and publishing any class III gaming compact for gaming on Comanche Allotment 2329.  At the start of the hearing, the court advised the parties that because defendants had filed (the previous evening, after business hours) a motion to dismiss raising a number of substantive issues, the court would not address and adjudicate plaintiff's preliminary injunction motion.  The court did, however, rule on plaintiff's motion for a temporary restraining order, and for reasons specifically stated on the record, entered a temporary restraining order on May 6, 2005 restraining defendants from publishing notice of approval of the class III gaming compact between the State of Oklahoma and the Fort Sill Apache Tribe of Oklahoma in the Federal

Register. Plaintiff, as directed by the court, responded to defendants' motion to dismiss on May 13, 2005. The court has reviewed defendants' motion and plaintiff's response. The court received additional evidence in the form of exhibits and heard additional arguments at a final hearing on May 27, 2005. The court now makes its determination as to both defendants' dismissal motion and plaintiff's preliminary injunction motion.

Complaint

The complaint in this matter was filed March 23, 2005. The following facts are alleged in the complaint.[1] Plaintiff, Comanche Nation, Oklahoma ("Comanche Nation") and the Kiowa Tribe entered into the First Treaty of Medicine Lodge Creek ("First Treaty") with the United States on October 21, 1867, establishing the original boundaries of the reservation for these two tribes. This First Treaty provided, among other things, that no tribe could be added to and permitted to share the Kiowa and Comanche Reservation without the consent of the two tribes. Subsequently, on that same date, the Kiowa Tribe, Comanche Nation and the Apache Tribe entered into the Second Treaty of Medicine Lodge Creek ("Second Treaty") with the United States, in which the Kiowa Tribe and Comanche Nation consented to share their reservation (established by the First Treaty) with the Apache Tribe. The Second Treaty reaffirmed the requirement that in order for the United States to add any tribe to the reservation, it would have to obtain the consent of the three tribes. The Kiowa, Comanche and Apache reservation shall hereinafter be referred to as the "KCA Reservation."

By Executive Order in October of 1871, the United States established the Fort Sill Military Reserve, setting aside 23,040 acres of the KCA Reservation for that purpose. Members of the Chiricahua Band of Apaches were eventually placed on the

---

[1]Many of the facts hereinafter enumerated which are alleged in the complaint have been stipulated to by the parties in the Stipulated Facts for Preliminary Injunction Hearing May 6, 2005, filed May 6, 2005 (docket entry no. 35).

Fort Sill Military Reserve as prisoners of war of the United States. These prisoners of war were removed from the Fort Sill Military Reserve in 1913 and 1914. Seventy-six Chiricachua prisoners remained in Oklahoma and were individually settled on various allotted lands within the KCA Reservation. These remaining Chiricachuas formally organized as a tribe in 1976 and became known as the Fort Sill Apache Tribe of Oklahoma ("FSA Tribe"). The FSA Tribe is distinct and separate from the Apache Tribe that was signatory to the Second Treaty. In addition, the FSA Tribe was not granted any interest in the allotments to the individual members of the Chiricahua Band of Apaches.

On October 6, 1892, the United States negotiated an agreement with the Kiowa Tribe, Comanche Nation, and Apache Tribe for the allotment of lands of the KCA Reservation to individual members of the three tribes. This was known as the Jerome Agreement. Pursuant to the Jerome Agreement, the United States acquired a substantial portion of the KCA Reservation and allotted individual tracts of land to the individual members of the three tribes. The tracts were held in trust by the United States for the beneficial use of the Indian owner.

A Comanche Nation member, Charlie Kerchee, was allotted a parcel of land from the KCA Reservation, identified as the Comanche Allotment 2329. On December 4, 1986, Robert Rowell, a member of the Kiowa tribe, purchased 0.53 acres of the allotment from an heir of Mr. Kerchee. The parcel continued to be held in trust by the United States on behalf of Robert Rowell.

Mr. Rowell began operating a bingo hall on the 0.53 acres of the Comanche Allotment 2329 without obtaining a license from the Comanche Nation. The Bureau of Indian Affairs ("BIA") informed Mr. Rowell that his unlicensed activity violated the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701, *et seq.* Mr. Rowell thereafter leased the property to the FSA Tribe, which in turn, employed Mr. Rowell

3

as bingo manager and reopened the gaming facility.  Although the BIA took the position that to lawfully conduct gaming on the property, the FSA Tribe was required to obtain a license from the Comanche Nation, no license was ever sought or obtained from the Comanche Nation.

In late 1992 and early 1993, the FSA Tribe attempted to purchase the 0.53 acres of the Comanche Allotment 2329, for which it sought the BIA's approval.  The BIA took the position that it was required by regulation to give notice to the Comanche Nation and solicit the Comanche Nation's position on the proposed transfer.  The Comanche Nation objected to the FSA Tribe's acquisition of the property and the BIA denied the FSA Tribe's request.

In May of 1995, the FSA Tribe reinitiated its request to the BIA to acquire the 0.53 acres of the Comanche Allotment 2329 in trust for gaming and other economic development purposes.  The BIA first denied the reinitiated request based upon its prior determinations.  It subsequently reversed its position, when then-Assistant Secretary – Indian Affairs, Ada Deer, directed the BIA to conduct a new review of the request without soliciting the consent of the Comanche Nation.  The Comanche Nation did not receive notice of the reinitiated application or the review and approval process.  The Comanche Nation's comments on the jurisdictional issues were not solicited and no public notice was given.  The Assistant Secretary approved the application, and on April 2, 1999, equitable title to the subject property was transferred to the FSA Tribe and the transfer was recorded in the BIA land titles and records office.

In its complaint, the Comanche Nation seeks judicial review of the Assistant Secretary's decision under the Administrative Procedures Act ("APA"), 5 U.S.C. § 704.

In the complaint, plaintiff also alleges that IGRA places authority to regulate class I and class II gaming with the Indian tribe having jurisdiction over the Indian

4

lands in question.  IGRA also requires that any class III gaming within Comanche Nation jurisdiction be conducted in conformance with Comanche law.  On December 2, 2000, the Comanche Nation passed a resolution amending a gaming ordinance to clarify that the Comanche Nation's regulatory jurisdiction over gaming extended to "all lands originally allotted to the Comanche Nation or its members that are held in trust by the United States, regardless of the tribal affiliation of the owner (whether an individual or a tribe), unless the Comanche Nation has expressly authorized in writing the relinquishment of such land from its jurisdiction."  The National Indian Gaming Commission disapproved the proposed amendment to the gaming ordinance based upon the decision of the Department of Interior ("DOI") and the BIA to take the 0.53 acres of the Comanche Allotment 2329 in trust for the FSA Tribe.

Plaintiff alleges that the DOI is in the process of reviewing a class III gaming compact between the FSA Tribe and the State of Oklahoma for gaming to be conducted on the property without the consent, approval or license of the Comanche Nation.  Plaintiff also alleges that defendants intend and will continue to accept trust lands allotted to Comanche Nation members within the KCA Reservation in trust for the FSA Tribe without providing notice to and without obtaining consent from the Comanche Nation.

In its first claim, the Comanche Nation alleges that the transfer of the 0.53 acres of the Comanche Allotment 2329 to the FSA Tribe violated the Comanche Nation's treaty rights.  The Comanche Nation contends that the Assistant Secretary  lacked authority to abrogate the treaty rights by permitting the FSA Tribe to acquire trust title to the land without the consent of the Comanche Nation and that his decision was arbitrary, capricious and contrary to law in violation of the APA.

For its second claim for relief, the Comanche Nation contends that the transfer of the parcel without its consent also violates 25 C.F.R. § 151.8.  According to the

Comanche Nation, the regulations governing acquisition of trust property require the DOI to provide notice and obtain consent from an Indian tribe when one Indian tribe seeks to have land situated within the boundaries of another tribe's reservation taken into trust. Because the Comanche Nation was not provided with notice of FSA Tribe's reinitiated application for transfer of title, the Comanche Nation contends that the Assistant Secretary's approval of the acquisition violates § 151.8 and was therefore arbitrary, capricious and contrary to law under the APA.

In its first and second claims, the Comanche Nation seeks:

(1)    a declaratory judgment that the transfer of the 0.53 acres is invalid and that the parcel remains held in trust for the prior owner;

(2)    a preliminary and permanent injunction enjoining defendants (i) from accepting or holding the parcel in trust for the FSA Tribe without the Comanche Nation's consent, (ii) approving any leases of the parcel for the FSA tribe without consent of the Comanche Nation, (iii) approving any class III gaming compact under IGRA on the parcel without consent of the Comanche Nation, and (iv) approving or allowing any activities on the parcel that do not comply with Comanche Nation law;

(3)    a declaratory judgment that the parcel may not be transferred to any other tribe other than the Kiowa and Apache tribes without consent of the Comanche Nation; and

(4)    a declaratory judgment that the Comanche Nation retains jurisdiction over the parcel of land and that Comanche Nation law continues to have full force and effect with respect to activities on the parcel.

In its third claim for relief, the Comanche Nation contends that by authorizing and allowing the FSA tribe to conduct gaming and other activity on the 0.53 acres of the Comanche Allotment 2329, defendants have abrogated the Comanche Nation's criminal and civil jurisdiction over the allotment. The Comanche Nation contends that

6

under federal law, it retains criminal and civil jurisdiction over lands allotted to individual tribal members and held in trust by the United States.  This jurisdiction continues so long as the land remains in trust status, no matter who acquires beneficial title.  The Comanche Nation contends that even if the actions of the DOI in accepting the parcel in trust for the FSA cannot be challenged, any abrogation of the Comanche Nation's criminal and civil jurisdiction over the land is unlawful.  The Comanche Nation contends that the approval of economic development on this parcel and the approval of class III gaming compact under IGRA deprives the Comanche Nation of its ability to tax, regulate and otherwise exercise jurisdiction over the activities on that land.

The relief it seeks in the third claim for relief includes:

(1)     a declaratory judgment that notwithstanding the transfer of the parcel to the FSA tribe, the Comanche Nation retains jurisdiction over the parcel and Comanche Nation law continues to have full force and effect on that parcel;

(2)     a preliminary and permanent injunction enjoining defendants (i) from approving any leases on the parcel without the Comanche Nation's consent; (ii) from approving any class III gaming compact without consent of the Comanche Nation; (iii) from approving or allowing any activities, including gaming, that does not comply with Comanche Nation law; and

(3)     a declaratory judgment that the defendants' approval in the activities on the parcel inconsistent with Comanche Nation law is unlawful.

In its fourth claim for relief, the Comanche Nation contends that it is informed that the defendants intend to accept other Comanche Nation allotments in trust for FSA Tribe in violation of its treaty rights and its rights of notice and consent under 25 C.F.R. § 151.8 and it seeks to preclude that action.  One parcel of land is 39 acres in the Comanche Allotment 2329 and the other is 25 acres in the Comanche Allotment 2331.

The relief it seeks in the fourth claim of relief includes:

(1)     a declaratory judgment that the land allotted to the Comanche Nation's members may not be transferred in trust to the FSA Tribe without the consent of the Comanche Nation;

(2)     a preliminary and permanent injunction enjoining defendants from accepting and holding the transfer of any trust lands allotted to Comanche Nation members in trust for the FSA Tribe or any other tribe other than the Kiowa or Apache tribes without the Comanche Nation's consent.

Preliminary Injunction Motion

Although the Comanche Nation has requested in its complaint a preliminary injunction seeking to enjoin defendants in various ways, the Comanche Nation, in its motion for preliminary injunction, only seeks to preclude defendants from approving and publishing the approval in the Federal Register of the class III gaming compact between the FSA Tribe and the State of Oklahoma for gaming on the 0.53 acres on the Comanche Allotment 2329.  It states that unless defendants are restrained from approving and publishing the approval of the compact, the Comanche Nation will be irreparably harmed because of the unlawful deprivation of its jurisdictional authority. According to Stipulated Facts for Preliminary Injunction Hearing on May 6, 2005, filed by the parties on May 6, 2005 (docket entry no. 35), the FSA Tribe has entered into a class III gaming compact with the State of Oklahoma to conduct gaming on the 0.53 acres of the Comanche Allotment 2329.  The compact has been approved or has been deemed approved by the DOI.  However, the compact has not yet been published in the Federal Register and the FSA Tribe cannot legally conduct class III gaming until the compact is published.  The parties reached an agreement that defendants would not publish any notice of the approval of the compact before May 9, 2005, *see* Stipulated Order (docket entry no. 22).  As previously stated, on May 6, 2005, the court entered

8

a temporary restraining order restraining defendants from publishing notice of approval of the class III gaming compact between the State of Oklahoma and the FSA Tribe in the Federal Register.

The Comanche Nation contends that defendants' publication of the class III gaming compact, which makes the compact effective, will cause immediate and irreparable harm to the tribe because it will result in a significant interference with the Comanche Nation's right of self-governance over activities within its jurisdiction. Specifically, the tribe contends that publication of the compact will authorize State regulatory involvement on the property. In addition, the tribe asserts that the increased gaming and other commercial activity will place additional burdens on Comanche Nation law enforcement with no corresponding authority for the Comanche Nation to exercise taxing or regulatory authority over those activities. Furthermore, the tribe contends that since the compact, once published, will be effective until 2020 and will be between two other sovereign entities, its ability to challenge the compact may face substantial impediments.

The Comanche Nation also asserts that the balance of harms weighs heavily in favor of the tribe. It contends that while it will suffer immediate and irreparable harm if defendants are not restrained, defendants will suffer no harm. According to the tribe, defendants will suffer no financial or regulatory burden in the delay of the approval of the compact. Moreover, the Comanche Nation contends that its application is narrowly tailored to preserve the status quo with respect to class III gaming while the merits of the case are heard. The Comanche Nation contends that the injunction is not adverse to the public interest because by maintaining status quo, jurisdictional complexities and questions regarding the rule of law to be applied to the public and the class III activities will be avoided. The tribe also asserts that it is in the public interest that it not be put

9

in the position of having to shoulder an increased law enforcement burden without adequate taxing or regulatory authority.

The Comanche Nation finally contends that it has a substantial likelihood of success on the merits in that the transfer of the 0.53 acres of property to the FSA Tribe without the Comanche Nation's consent clearly violated the Comanche Nation's treaty rights and the federal trust acquisition regulations.  It also contends that the transfer violated existing Tenth Circuit precedent of Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 142 F.3d 1325 (10th Cir.), *cert. denied*, 525 U.S. 947 (1998).

Indispensable Party

In their response and motion to dismiss, defendants have argued that this action must be dismissed at the outset on the ground that the FSA Tribe is an indispensable party to this action and cannot be brought into the action without its consent due to its sovereign immunity.  At the May 6, 2005, the court inquired as to the possibility of the FSA Tribe intervening in the action.  Shortly after the May 6, 2005 hearing, the FSA Tribe filed a motion to intervene as a party-defendant, pursuant to Fed. R. Civ. P. 24(a)(2) or 24(b).  *See*, Motion By Fort Sill Apache Tribe of Oklahoma for Leave to Intervene as Party-Defendant, filed May 12, 2005 (docket entry no. 40).   The Comanche Nation, in response, objected to the intervention of the FSA Tribe pursuant to Rule 24(a)(2) on the same grounds set forth in its Reply to Defendants' Response to Motion for Temporary Restraining Order and Preliminary Injunction, filed April 27, 2005 (docket entry no. 28), arguing that the FSA Tribe is not an indispensable party to this action.   However, the Comanche Nation did not object to the FSA Tribe's permissive intervention in the case in accordance with Rule 24(b).  With no objection from the Comanche Nation as to permissive intervention and the court likewise concluding that permissive intervention was appropriate, the court entered an order on May 20, 2005 (docket entry no. 48) granting the FSA Tribe's motion to the extent it

sought to intervene in the action pursuant to Rule 24(b).   And the FSA Tribe participated in the final hearing held on May 27, 2005, by submitting additional exhibits and making additional arguments in regard to the Comanche Nation's motion.

In light of the FSA Tribe's intervention in this case, the court concludes that the indispensable party issue raised by defendants in their response and in their motion to dismiss is no longer a viable issue.   The court finds that defendants' argument of dismissal under Fed. R. Civ. P. 19 is now moot.

Standing

In their motion to dismiss, defendants also contend that this action must be dismissed because the Comanche Nation lacks standing to enjoin the class III gaming compact between the FSA Tribe and State of Oklahoma.   According to defendants, Comanche Nation is not a party to the compact, and as such, it cannot demonstrate any actual or imminent injury which will ensue from publication of the compact.   In addition, defendants contend that the Comanche Nation cannot show how the underlying issue, the challenge to the status of the 0.53 acres of the Comanche Allotment 2329, is traceable to the publication of the class III gaming compact in the Federal Register.   Defendants contend that the Comanche Nation cannot show how granting an injunction restraining publication will address its alleged injury, namely, that the Assistant Secretary improperly took land into trust for the FSA Tribe.

Defendants challenge the Comanche Nation's standing in the constitutional sense.   The constitutional requirements for standing are (1) an injury in fact; (2) a causal connection between the injury and the challenged act; and (3) a likelihood that the injury will be redressed by a favorable decision.   Vermont Agency of Natural Res. v. United States ex. rel. Stevens, 529 U.S. 765, 771 (2000).   The alleged injury must be concrete and particularized and imminent or actual, as opposed to conjectural or hypothetical. *Id.*

11

The court concludes that the Comanche Nation has sufficiently alleged an injury in fact. The Comanche Nation has alleged that when defendants transferred the subject property into trust status for the FSA Tribe without the Comanche Nation's consent, it was deprived of its ability to tax, regulate or otherwise exercise jurisdiction over the activities on that land. The Tenth Circuit has concluded that a significant interference with a tribe's right of self-government is sufficient to show irreparable harm. Prairie Band of Potowatomi Indians v. Pierce, 253 F.3d 1234, 1250-1251 (10th Cir. 2001); Seneca-Cayuga Tribe of Oklahoma v. State of Okla. ex rel. Thompson, 874 F.2d 709, 716 (10th Cir. 1989). The Comanche Nation has also sufficiently alleged causation. The Comanche Nation has alleged that the cause of its injury was the unlawful action of defendants of transferring the property in trust to the FSA Tribe without its consent. The Comanche Nation has alleged that defendants' actions violated its treaty rights and its rights under federal regulations. The court also concludes that the Comanche Nation has alleged that its injury will be redressed by a favorable decision. If the transfer is declared by the court to be void (as prayed for by the Comanche Nation in the first and second claims for relief), the harm to the Comanche Nation, namely, the inability to tax, regulate or otherwise exercise jurisdiction over the land, will be redressed. If the court were to grant the tribe's third claim for relief, namely, a declaration that despite the transfer the Comanche Nation still retains its ability to tax, regulate and otherwise exercise jurisdiction over the property, the Comanche Nation's injury will also be redressed. The court therefore concludes that the Comanche Nation has standing to bring this action.

Defendants' challenge to plaintiff's standing focuses mainly on the specific and immediate relief requested in the preliminary injunction, namely, that the court enjoin publication of the class III gaming compact. Although the Comanche Nation was not a party to the class III gaming compact between the FSA Tribe and the State of

Oklahoma, the court agrees with the Comanche Nation that the harm to the tribe is embodied, in part, in the compact. The court also agrees with the Comanche Nation that the validity of the class III gaming compact turns on whether the Comanche Nation retains jurisdiction over the subject property. The class III compact at issue would not exist in the absence of the transfer of property in trust for the FSA Tribe. The court concludes that the Comanche Nation has a direct interest in the publication of the compact because the publication makes the approval of the compact effective. If the compact becomes effective, the ability of the Comanche Nation to tax, regulate or otherwise exercise jurisdiction over the class III gaming activities will, at a minimum, be substantially impaired. While all of the alleged harm to the Comanche Nation will not be completely redressed by a preliminary injunction restraining publication of the class III compact, a preliminary injunction will the preserve status quo and will prevent any escalation of the harm to the Comanche Nation. Thus, the court concludes that the tribe has standing to seek its preliminary injunction.

Exhaustion of Administrative Remedies

In their response, defendants contend that the Comanche Nation cannot seek redress from the court because it has failed to exhaust administrative remedies. Defendants contends that exhaustion of administrative remedies is required before an agency's decision becomes final and subject to judicial review under the APA.

The court does not agree. Under 25 C.F.R. § 2.6(c), a decision by the Assistant Secretary – Indian Affairs is final for purposes of judicial review unless otherwise provided. Indeed, 25 C.F.R. § 2.6(c) provides:

> Decisions made by the Assistant Secretary – Indian Affairs shall be final for the Department and effective immediately unless the Assistant Secretary – Indian Affairs provides otherwise in the decision.

The decision to transfer the 0.53 acres of the Comanche Allotment 2329 to the FSA Tribe which is challenged by the Comanche Nation was a decision issued by the Assistant Secretary – Indian Affairs.  There is nothing in the record to demonstrate that the Assistant Secretary indicated that the decision was not final.  Furthermore, the court notes that defendants in paragraph 5 of the "Background" section of their own response brief acknowledge that the decision of the Assistant Secretary to transfer the subject property was a final agency action.  The court therefore concludes that there are no administrative remedies to exhaust and judicial review under the APA is proper.

Quiet Title Act

The Comanche Nation seeks judicial review of the decision to transfer under the APA.  The APA waives federal sovereign immunity for suits against federal officers, but it expressly confers no "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  5 U.S.C. § 702(2).  Defendants, in their dismissal motion, argue that the Quiet Title Act ("QTA") is a statute that forbids relief under the APA.  *See*, Block v. North Dakota ex rel. Bd. of University and School Lands, 461 U.S. 273, 286 (1983)("Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property.")  Defendants argue that the QTA waives federal sovereign immunity except for disputes involving "trust or restricted Indian lands."  28 U.S.C. § 2409a(a).  Because the United States holds title to the subject property in trust for the FSA Tribe, defendants contend that the court lacks jurisdiction to adjudicate the Comanche Nation's claims.  Defendants contend that the Comanche Nation's suit is the equivalent of a quiet title in property action in that it is seeking to declare the trust acquisition void.  According to defendants, the Comanche Nation clearly seeks to adjudicate a disputed title in which the United States claims an interest.  Because the

14

QTA does not waive sovereign immunity over trust or restricted Indian lands, defendants contend the Comanche Nation's action must be dismissed.

The court is not persuaded that the Comanche Nation's action is a quiet title action. As previously quoted, the Supreme Court in <u>Block v. North Dakota ex rel. Bd. of University and School Lands,</u> 461 U.S. at 286, stated "Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' *title* to real property." (Emphasis added).  Only disputes pertaining to the United States' ownership of real property fall within the parameters of the QTA. <u>Kansas v. United States,</u> 249 F.3d 1213, 1224 (10th Cir. 2001).  The Comanche Nation is not challenging the United States' right, title or ownership interest in the land, nor does it seek to disturb any possessory interest of the United States in the property. Even if the Comanche Nation succeeds in this action, title to the subject property will remain with the United States.  At most, beneficial title will be affected – a matter in which the United States and its officers have no interest in their own right.   The Comanche Nation is simply seeking review of an administrative agency decision to hold the property in trust for the FSA Tribe for gaming and other commercial activities. The court concludes that the cases relied upon by defendants are distinguishable.  The court concludes that the APA applies to the Comanche Nation's claim and that this action is accordingly not barred by sovereign immunity.

<u>Statute of Limitations</u>

Defendants assert in their motion to dismiss that the Comanche Nation's claims, if governed by the APA, are barred by the applicable six-year statute of limitations. *See,* 28 U.S.C. § 2401(a).  As previously stated, the complaint in this action was filed on March 23, 2005.  While the Comanche Nation characterizes the transfer, approved on April 2, 1999, as the final agency decision at issue, defendants contend that the actual final agency decision was the March 11, 1999 decision of the Assistant Secretary

-- Indian Affairs to approve and authorize the acquisition of the property in trust for the FSA Tribe. Because the complaint was filed more than six years after the March 11, 1999 decision, defendants contend that the Comanche Nation's action is time-barred.

Section 2401(a) provides in pertinent part that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). This six-year limitations period applies to claims arising under the APA, *see*, Wind River Mining Corp. v. United States, 946 F.2d 710, 712-13 (9th Cir. 1991), and it also applies to equitable as well as legal claims, *see*, Christensen v. United States, 755 F.2d 705, 708 (9th Cir.1985), *cert. denied*, 476 U.S. 1181 (1986). In addition, Indian tribes are not exempt from § 2401(a)'s application. Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 592 (9th Cir.), *cert. denied*, 498 U.S. 824 (1990).

Courts have concluded that a cause of action "first accrues" for purposes of § 2401(a) "'when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action.'" United States v. Sams, 521 F.2d 421, 429 (3d Cir. 1975) (quoting Japanese War Notes Claimants Ass'n of Phil., Inc. v. United States, 373 F.2d 356, 358 (Ct. Cl.), *cert. denied*, 389 U.S. 971 (1967)); *see also* Sisseton-Wahpeton Sioux Tribe, 895 F.2d at 594 ("cause of action does not accrue until the claim is 'perfected'"); Impro Prods., Inc. v. Block, 722 F.2d 845, 850 (D.C. Cir. 1983) (cause of action first accrues "when the 'right to resort to federal court [is] perfected'" (quoting Oppenheim v. Campbell, 571 F.2d 660, 662 (D.C. Cir. 1978))), *cert. denied*, 469 U.S. 931 (1984)).

Courts, however, have also concluded that the statute of limitations, for purposes of § 2401(a), does not commence running until the plaintiff knew or should have known the facts upon which its claims are based. San Carlos Apache Tribe v. U.S., 272 F.Supp.2d 860, 896 (D. Ariz. 2003)(citing Sisseton-Wahpeton Sioux Tribe, 895 F.2d

at 594). Courts have also tolled the commencement of a limitations period on a claim against the United States where the plaintiff's injury was "inherently unknowable." *See*, United States v. Sams, 521 F.2d at 429-30.

In the case at bar, the Comanche Nation could not have known the facts upon which its claims are based until April 2, 1999. The Comanche Nation was not notified of the Assistant Secretary's March 11, 1999 decision. The earliest date that the Comanche Nation, through the exercise of reasonable diligence, could have learned of the facts which give rise to its claims in regard to the Assistant Secretary's decision was the date the deed was approved by the BIA and recorded in the BIA land titles and records office – April 2, 1999.[23]  *See*, Stipulated Facts for Preliminary Injunction

---

[2]At the May 27, 2005 hearing, the FSA Tribe submitted a Declaration of Charldon Keith Yackeyonny, former chairman of the Comanche Nation. In the document, Mr. Yackeyonny declares that during the years 1997, 1998 and 1999, he had a number of telephone conversations with Betty Tippelonnie at the Anadarko Agency and others concerning the intended purchase of the subject property by the FSA Tribe. He also declares that he had correspondence with Dan Derringwater concerning the proposed transfer and indicated to all official who inquired that the Comanche Nation would not object to the transfer. In addition, he declares that he received a letter from Sharon Blakewell, Field Solicitor, in the summer of 1998 concerning final agency transfer of the subject property and that the letter was a notice of the proposed transfer and notification that the Comanche Nation had 30 days to object or the property would be transferred. He further declares that he advised the members of the Comanche Tribal Business Committee of the agency and notice and it was the decision of the committee not to object because of an internal political dispute. The Comanche Nation has submitted the Declaration of Norman Nauni and the Declaration of Carol KahRahRah to dispute the declaration of Mr. Yackeyonny, raising an issue as to the credibility of Mr. Yackeyonny's testimony. Nevertheless, the court concludes that Mr. Yackeyonny's declaration does not demonstrate that the Comanche Nation knew of the March 11, 1999 decision and would have known of that decision before the deed was approved by the BIA and recorded in the BIA land titles on April 2, 1999.

[3]Although the Comanche Nation did not *own* the .53 acres of Comanche Allotment 2329 at the time of the transfer, it surely had, for the reasons that have been discussed, a protectable interest which was affected by the transfer. The existence of the Comanche Nation was known to the defendants, as was the means of contacting that tribal entity. The defendants' suggestion that the tribe's right to review could be extinguished on the basis of the date of an act of which no notice was given to the tribe gives rise to the same due process concerns that were determinative in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) (Fourteenth Amendment Due Process).

Hearing May 6, 2005, p. 5, ¶ 17.  The court therefore concludes that the limitations period of § 2401(a) did not commence to run until April 2, 1999 at the earliest. Consequently, the Comanche Nation's complaint, filed March 23, 2005, is timely.

Statutorily Mandated Act

In their response, defendants assert that the court should not enjoin the Secretary from performing the statutorily mandated act of publishing the class III gaming compact.  Defendants contend that the Secretary is required by statute, specifically, 25 U.S.C. § 2710(d)(8)(D), to publish notice in the Federal Register of any compact that is approved or considered to have been approved.  Because the compact has been approved by the Secretary, defendants contend that the Secretary should not be enjoined from publishing that approval as required by § 2710(d)(8)(D) so that the compact can become effective as provided for in 25 U.S.C. § 2710(d)(3)(B).

The court notes that although the Secretary is required by § 2710(d)(8)(D) to publish approval of the compact, there is no time limit for performing that statutorily mandated act.  As there appears to be no timing for publication mandated by Congress under the statute, the court discerns no basis for declining to enjoin the Secretary from performing the ministerial act of publishing the compact to preserve the status quo pending final determination of the merits.  The court therefore rejects defendants' contention that the court should not enter a preliminary injunction on the basis that it would restrain a statutorily mandated act.

Propriety of the Decision

Defendants, in their motion to dismiss, contend that the acquisition of the property in trust for the FSA Tribe without notice and consent of the Comanche Nation was a proper decision.  Defendants assert that under the decision in Fort Sill Apache Tribe v. United States, 41 Ind. Cl. Comm. 37 (1977), the FSA Tribe also has a claim to the former KCA Reservation, and therefore, consent of the Comanche Nation was

not required under 25 C.F.R. § 151.8 for the FSA Tribe to acquire the trust land. According to defendants, there is no need for any of the four tribes who have claims to the former KCA Reservation to seek consent of the other tribes before acquiring land in trust within the former KCA Reservation.

It appears to the court that defendants are in effect challenging the substantive merits of the Comanche Nation's claims in the context of a dismissal motion. The court, however, concludes that the Comanche Nation has stated claims for which relief may be granted under the standard of Rule 12(b)(6), Fed. R. Civ. P. Dismissal therefore is not appropriate on this basis.

Preliminary Injunction Standard

In order for the Comanche Nation to obtain a preliminary injunction, the tribe must show that (1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable harm unless the preliminary injunction is issued; (3) the threatened injury outweighs the harm the preliminary injunction might cause the opposing party; and (4) the preliminary injunction if issued will not adversely affect the public interest. Prairie Band of Potawatomi Indians, 253 F.3d at 1246. If the tribe can establish the last three factors, the first factor becomes less strict. Instead of showing a substantial likelihood of success, the tribe need only proved that there are "'questions going to the merits . . . so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" Id. at 1246-47 (quoting Federal Lands Legal Consortium v. United States, 195 F.3d 1190, 1194 (10th Cir. 1999)).

Having reviewed the complaint, the parties' submissions in support of and in opposition to the preliminary injunction, the parties' stipulation of facts, and the additional evidence presented on May 27, 2005, and having heard the arguments of counsel, the court, for the reasons specifically stated on the record at the May 6, 2005

hearing on the application for the temporary restraining order, and as hereinafter follows, likewise concludes that a preliminary injunction should be entered.

The court finds that the Comanche Nation has sufficiently demonstrated that it will suffer irreparable harm from publication of the class III gaming compact. The court concludes that the publication of the compact, upon which the compact becomes effective, will interfere with the tribe's right of self-government. The compact will authorize state regulatory involvement on the property. The Comanche Nation will have no regulatory control or taxing authority with respect to the class III gaming activities. The court also finds that the compact, if made effective, will result in an escalation of gaming activity on the subject property. This increased gaming activity will likely cause an increase in criminal activity. The Comanche Nation law enforcement authorities have been called upon to enforce criminal laws on the subject property and an increase in criminal activity will likely result in additional burdens on the Comanche Nation and its resources.[4] However, this increased burden on the tribe's law enforcement resources will not be accompanied by a corresponding ability to exert taxing power to fund the additional expense. Moreover, it does not appear that the tribe will be in a position to defray, by other means, the additional expense resulting from the additional law enforcement responsibilities. The tribe will also be in a poor position to minimize any such activity because it will have no effective regulatory authority over the property. The Tenth Circuit has concluded that a significant

---

[4]At the May 27, 2005 hearing, the FSA Tribe argued, based upon testimony given at the May 6, 2005 hearing in regard to the issue of security, that the burden on the Comanche Nation for law enforcement at the FSA Tribe's facility was minuscule. The FSA Tribe pointed to the fact that the Comanche Nation had only been called to the facility 11 times over an 18 month period. The court however agrees with the Comanche Nation that if the class III gaming compact is made effective and the FSA Tribe is permitted to engage in the class III gaming activities, increased criminal activity will likely result and this increase will have an increased effect on not only the tribe's law enforcement resources but also on the Comanche Nation's resources in having to prosecute the additional offenses from the increased criminal activity.

interference with a tribe's self-government constitutes irreparable harm. Prairie Band of Potawatomi Indians, 253 F.3d at 1250-1251; Seneca-Cayuga, 874 F.2d at 716. The court therefore finds that the Comanche Nation has sufficiently satisfied the irreparable harm factor.

The court notes that at the May 27, 2005 hearing, the FSA Tribe, in regard to the irreparable harm factor, also argued that the Comanche Nation has an alternative remedy. In its fourth claim of relief, the Comanche Nation avers that it is informed that defendants intend to accept other Comanche Nation allotments in trust for the FSA Tribe in violation of its treaty rights and its rights of notice and consent under 25 C.F.R. § 151.8 and it seeks to preclude that action. The FSA Tribe contends that the Comanche Nation can challenge those allotments and raise all of its arguments in this case in regard to those allotments. The court, however, concludes that the FSA Tribe has not sufficiently shown how any decision addressing a challenge to those allotments would impact the 0.53 acres which are at issue in this case.

The court finds that the balance of harm weighs heavily in favor of the Comanche Nation because defendants will bear no additional financial or regulatory burden from any delay of the act of publication. The tribe's right of self-governance will be undermined. Although the FSA Tribe will suffer economic loss from the inability to conduct class III gaming activities without the effective compact, the court concludes that the harm to the Comanche Nation still tips the scale in favor of the Comanche Nation. Entry of a preliminary injunction will simply maintain the status quo between the parties. The FSA Tribe, while being precluded from conducting class III gaming activities, will still be authorized to continue its class II gaming activities. Although it may not be on equal footing with the Comanche Nation without the class III gaming activities, the court concludes the harm to the Comanche Nation from the loss of tribal self-governance is greater than the economic loss to the FSA Tribe. The

court intends to move this case expeditiously in order to resolve the issues between the parties. The court also notes that should it be found that the preliminary injunction was improvidently granted, security has been and will hereinafter be ordered to be given by the Comanche Nation which should help alleviate the economic loss the FSA Tribe may suffer due to the relief granted *pendente lite* in this order.

The court finds that the entry of a preliminary injunction will not be adverse to the public interest. Introduction of class III gaming on the parcel in question (with the resultant state regulatory involvement) prior to a determination of the jurisdictional issues in this case will introduce jurisdictional and other complexities and questions as to the rule of law to be applied to the public at the gaming facility. The court concludes that it is in the interest of the public to have the jurisdictional issues resolved prior to the commencement of the class III gaming activities on the subject property.

The FSA Tribe has argued that it is in the public interest to permit the FSA Tribe facility, which is a small operation and which provides the primary source of funding for the FSA Tribe and its members, to compete with the Comanche Nation. The court, however, is not convinced that the FSA Tribe will be unable to effectively compete with the Comanche Nation without the class III gaming activities during the pendency of this case. As previously stated, the FSA Tribe's facility may not be on equal footing with the Comanche Nation. However, the court is also not convinced that the FSA Tribe's facility will be unable to effectively compete with the Comanche Nation's facility and will be forced to close down unless class III gaming proceeds.

Because the court finds that the Comanche Nation has established the last three factors of the preliminary injunction standard stated above, the court finds that the Comanche Nation is only required to demonstrate that there are "'questions going to the merits . . . so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" Prairie Band of Potawatomi

Indians, 253 F.3d at 1246-47 (quoting Federal Lands Legal Consortium, 195 F.3d at 1194). The court concludes that the issues as to whether the transfer of the 0.53 acres from Comanche Allotment 2329 to the FSA tribe without the Comanche Nation's consent violated the tribe's treaty rights, violated the applicable federal regulations and was contrary to the law as expounded in Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier, 142 F.3d 1325 (10th Cir.), cert. denied, 525 U.S. 947 (1998), deserve more deliberate consideration. Indeed, the additional exhibits submitted during the May 27, 2005 hearing and the arguments raised in regard to those exhibits convince the court that the issues in this case are deserving of more deliberate investigation.

Security

Pursuant to Fed. R. Civ. P. 65(c), the court finds that the appropriate amount of the security to be posted by the plaintiff, as required by Rule 65(c), conditioned as set forth in that rule, shall be the sum of $200,000, secured by a surety bond in that amount, issued by a corporate surety on the Court Clerk's list of approved sureties (or secured by a cash deposit in the amount of $100,000 [$100,000 having previously been deposited with the Court Clerk], as plaintiff may elect). Immediate posting of the bond is waived. This injunction will dissolve without further action by the court if the required security is not posted by way of a surety bond, or deposited in cash in the registry of the court, by June 10, 2005.

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's Motion for Preliminary Injunction Staying Agency Action Pending Review, filed March 31, 2005(docket entry no. 8) is **GRANTED**.

IT IS ADDITIONALLY ORDERED, ADJUDGED, AND DECREED that defendants are preliminarily restrained and enjoined, pending the further order of this court, from publishing any notice of approval of the Class III gaming compact between

the State of Oklahoma and the Fort Sill Apache Tribe of Oklahoma in the Federal Register.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that plaintiff shall provide security as set forth above, conditioned as set forth in Rule 65(c), in the sum set forth above, not later than June 10, 2005.

DATED this 27th day of May, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0328p011(pub).wpd

24