## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| COMANCHE NATION, OKLAHOMA, | ) ) ) | |
| Plaintiff | ) ) | |
| -vs- | ) ) | Case No. CIV-05-328-F |
| UNITED STATES OF AMERICA, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

### FORT SILL APACHE TRIBE OF OKLAHOMA'S SECOND
### MOTION AND BRIEF IN SUPPORT FOR ENFORCEMENT
### OF AGREEMENT OF COMPROMISE AND SETTLEMENT

Intervenor-Defendant Fort Sill Apache Tribe of Oklahoma ("Tribe") respectfully requests that this Court find the United States, through the representations of the National Indian Gaming Commission and its Chairman, to be in violation of the Agreement of Compromise and Settlement of March 7, 2007 ("Settlement Agreement").[1]  The grounds for this request follow.

The Court is very familiar with the controversy arising from the Government's treatment of issues addressed in the Settlement Agreement as they relate to the Tribe's efforts to commence gaming operations on Tribal trust lands in ancestral territory in Luna County, New Mexico.

The Court heard from the Tribe and United States in hearings conducted in August and October 2008.  The Court indicated that, while unwilling to hold the Government in breach of the

---

[1]The parties agreed the terms would be "incorporated ... in any Order dismissing the action ..., and that the Court shall have continuing jurisdiction to enforce the terms of this Agreement under the authority of <u>Kokkonen v. Guardian Life Insurance Co. of America</u>, 511 U.S. 375, 381-82 (1994)."  Settlement Agreement, ¶ 11.

Agreement of Compromise and Settlement ("Settlement Agreement") for failure to process the

Tribe's application for a Reservation Proclamation with respect to the "Akela Flats" property in

Luna County[2], the Court was nonetheless concerned about language in an opinion dated May 19,

2008 rendered by the Acting General Counsel of the National Indian Gaming Commission Penny

Coleman[3] ("Coleman Opinion") which was inconsistent with an agreed factual representation in

the Settlement Agreement that "[t]he United States does not acknowledge and/or recognize the

Chiricahua and/or Warm Springs Apache Tribes as 'Federally Recognized Tribes' ...." Id., ¶7(i).

The Court indicated the Coleman Opinion was inconsistent with the Settlement

Agreement and that, although "not ... the official position of the NIGC", Order (October 7, 2008)

at 2, nonetheless threatened the Tribe with "significant adverse effect":

> It was made reasonably apparent at the October 1 hearing that, although
> the Coleman opinion does not represent the official position of the NIGC, ... the
> very existence of the Coleman opinion may have significant adverse effect on the
> ability of the Fort Sill Apache Tribe to make the arrangements ... which are
> prerequisite to establishing the gaming operation which the Fort Sill Apache Tribe
> desires to conduct.
> * * * [O]ne matter was established with clarity at the October 1 hearing
> and a finding with respect to the matter should, in fairness to the Fort Sill Apache
> Tribe, be formalized in these proceedings.  At the October 1 hearing it was made
> abundantly clear to the court that the Chiricahua Tribe and the Warm Springs
> Apache Tribe are not federally recognized Indian tribes....

Opinion at 4.

---

[2]The Office of the Solicitor at Department of Interior has since rendered an opinion
relating to jurisdiction of the Luna County property that may make a formal Reservation
Proclamation superfluous.  See Memorandum, December 2, 2008 (Attachment 1), page 7
("The applicable subparts of [18 U.S.C. §1151 defining "Indian country"] to the Fort Sill
property are (a) Indian reservations and (b) dependent Indian communities...." (footnote omitted).

[3]The Coleman Opinion is in the record as doc. no. 102-2, filed with the Tribe's
supplemental brief in support of enforcement on July 31, 2008.  For ease of reference
it is attached here as well.  Attachments 2 & 3.

Thus the Court said it "specifically finds ... that the Chiricahua Apache and Warm Springs Apache Tribes have not been recognized by the United States of America, the United States Department of Interior, or any subordinate officer or agency thereof."  Id. at 5.

Following entry of this Order in October 2008, the NIGC formally withdrew the Coleman Opinion.  In January 2009 the Tribe proceeded to inform NIGC officials that the Tribe intended to commence Class II gaming operations in Luna County, where unemployment was endemic even before the onset of the gravest economic crisis in this country since the Depression.  The Tribe began such operations in April 2009.

That same month the NIGC requested the Tribe's position with respect to the applicability of regulations embodied in 25 C.F.R. Part 292.  Esther Dittler to Phillip Thompson, April 1, 2009 (Attachment 4). The Tribe responded promptly, arguing the new regulations were inapplicable in the circumstances, and that it was entitled to undertake Class II gaming at Akela Flats.  Jeff Houser to JoAnn Shyloski and Esther Dittler, April 8, 2009 (Attachment 5).

On July 21, 2009, Philip Hogen, the Chairman of the National Indian Gaming Commission issued a Notice of Violation ("NOV") (Attachment 6) with respect to the Tribe's Class II gaming operation at Akela Flats deriving from an opinion dated April 30, 2009 (Attachment 7) purportedly "supplemental" to the Coleman Opinion May 2008 the NIGC had formally **withdrawn**.[4]

Again prepared by Penny Coleman, this "supplemental opinion" ("Coleman Supplemental Opinion") is devoted almost exclusively to analysis that appeared in very

---

[4]The Tribe's representatives only became aware of the Coleman Supplemental Opinion when reviewing the NOV of July 21, 2009.

similar  terms in the original Coleman Opinion.  <u>Cf.</u> Coleman Opinion at 15-17, with Coleman

Supplemental Opinion at 4-7.

We submit the analysis remains fundamentally inconsistent with language in ¶7 of the

Settlement Agreement.  However, unlike the Coleman Opinion, the analysis of the Coleman

Supplemental Opinion now "**does** ...represent the official position of the NIGC ...." (emphasis

added).  Order at 4.  The Coleman Supplemental Opinion expresses this "official position" in

most relevant part as follows:

> As stated in the advisory legal opinion [the Coleman Opinion], the Tribe's evidence ... remains insufficient to support its claim that its government-to-government relationship was terminated. The evidence is insufficient because taking Chiricahua and Warm Springs Apache members as prisoners of war in 1886 did not necessarily constitute the federal government's termination of the Chiricahua and Warm Springs Apaches' federal recognition and a cessation of the government-to-government relationship. In fact the United States military force's decision to take the Chiricahuas as prisoners of war indicates that this Tribe was still considered a hostile but separate and sovereign entity.   Because this history fails to indicate or acknowledge any type of loss of federal recognition, it does not support the Tribe's assertion that the federal government terminated the federal recognition of the Chiricahua and Warm Springs Apache Tribe.
> * * *
> While the language of the [Settlement Agreement] acknowledges that the United States does not recognize the Chiricahua and Warm Spring Apache Tribes, this document state the facts on the date the Agreement was entered into.  It reflects that the successor tribe, the Fort Sill Apache Tribe is a Federally recognized tribe.  In other words, the fact that the Chiricahua or Warm Springs are not presently recognized is not evidence that the federal government terminated the government-to-government relationship .... It merely evidences that in the present day the Chiricahua and Warm Springs Apache are no longer recognized .... (footnote omitted).

Memorandum, Penny J. Coleman to Philip N. Hogen, April 30, 2009 (Attachment 7), page 6.

The NIGC continues to ignore the structure and plain meaning of ¶7 of the Settlement

Agreement:

g)  The Fort Sill Apache Tribe is successor–in-interest to the Chiricahua and Warm Springs Apache Tribes whose aboriginal territory ... includes those parts of Arizona and New Mexico where the United States currently holds land in trust for the benefit of the Fort Sill Apache Tribe...

h) The United States once maintained a government-to-government relationship with the Chiricahua and Warm Springs Apache Tribes ...

i)  The Federal Government does not acknowledge and/or recognize the Chiricahua and/or Warm Springs Apache Tribes as "Federally Recognized Tribes", or as entities "acknowledged to have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes."  70 Fed. Reg. 71194 at 1 (November 25, 2005).

j) On or about August 16, 1976, the Commissioner of Indian Affairs formally approved the Constitution of the Fort Sill Apache Tribe, and thereafter the United States acknowledged the Fort Sill Apache Tribe to be a Federally Recognized Tribe, and has maintained a government-to-government relationship with the Fort Sill Apache Tribe since that date.  See 70 Fed.Reg. 71194.

Settlement Agreement,  ¶ 7.

Thus the United States expressly agreed that it "once maintained a government-to-government relationship with the Chiricahua and Warm Springs Apache Tribes", ¶7(h), a relationship the **"once maintained"** formulation indicates ceased to exist[5], such that "the Federal Government does not acknowledge and/or recognize the Chiricahua and/or Warm Springs Tribes as 'Federally Recognized Tribes'", ¶7(i), a status first accorded the Fort Sill

---

[5]The historic record shows that, upon their release in 1913, the Government did not treat the surviving Apache prisoners of war on a Tribal basis, but arranged for their resettlement in New Mexico and Oklahoma on an individual basis.  Those remaining in Oklahoma were resettled, not on lands acquired for the Chiricahua and Warm Springs Tribes, but in allotments acquired in the KCA Reservation for individual Apache POWs.  See Fort Sill Apache Tribe  v. United States, 41 Indian Claims Commission 37, 70 (1977) (Attachment 8).   Excepted from the terms of the Settlement Agreement were "parcels of land ... which were transferred to individual Chiricahua and Warm Springs Apache upon their release in 1913 and 1914." (emphasis added). Id., ¶4(a).

Apache Tribe of Oklahoma in August 1976.  ¶7(j).

A fundamental premise of the Coleman Supplemental Opinion and resulting Notice of Violation is just as inconsistent with the foregoing representations as the Coleman Opinion criticized by this Court last October.

We also note that, in addition to a willingness to ignore the plain meaning of this Court's specific finding of October 7, 2008[6], the NIGC has may have ignored the requirements of a Memorandum of Agreement ("MOA") between the NIGC and Department of Interior executed by Mr. Hogen on behalf of the NIGC this past January.  The MOA provides in relevant part as follows:

> [r]egardless of whether the DIA [Interior's Division of Indian Affairs] or OGC [NIGC Office of General Counsel] is drafting the opinion, prior to the opinion (or drafts) being released to other entities other than the DOI and the NIGC, the Solicitor [of Interior] must concur in any opinion that provides legal advice relating to:
> * * *
> - The exceptions in 25 U.S.C. §2719.

Memorandum of Agreement Between The National Indian Gaming Commission and the Department of Interior, January 14, 2009 (Attachment 10).

---

[6]This would not be the first time the NIGC under this Chairman's leadership has chosen to flout the authority of a federal district court. When the U.S. District Court for the District of Columbia struck down the NIGC's "minimum internal control standards" ("MICS") as applied to Class III gaming in Colorado River Indian Tribe v. NIGC, 383 F.Supp. 123 (D.D.C. 2005) ("CRIT"), the NIGC's response was a press release announcing that the "NIGC disagrees with the CRIT decision. Accordingly, beyond its dealings with the Colorado River Indian Tribes, and until the Commission revises its regulations or a court of competent jurisdiction orders changes in the scope of its MICS regulations, it will continue to conduct business as usual with current MICS audits and enforcement actions." NIGC Press Release, August 30, 2005 (http://www.nigc.gov/Reading Room/Press Releases/PR20092005) (Attachment 9).

The Tribe and its representatives have seen no evidence the Department of Interior's Office of Solicitor concurred in the Coleman Supplemental Opinion of April 30, 2009.  If the NIGC acted in the absence of such concurrence, it has acted in violation of the MOA.

Chairman Hogan also troubled to issue a Notice of Violation at the very end of his tenure at the NIGC, rather than permit his successor to make a reasoned determination as appropriate in the first instance, which further indicates unalterable bias, and determination on his part to do all he can to thwart the Tribe's prospects for economic development in their ancestral lands during whatever brief time in office remains to him.

## CONCLUSION

The Fort Sill Apache Tribe of Oklahoma respectfully requests that this Court find that representations in the Coleman Supplemental Opinion relating to the recognition status of the Chiricahua and Warm Springs Apache Tribe are inconsistent with, and in violation of ¶7 of the Settlement Agreement of March 7, 2007.

The Tribe also requests that the Court modify the usual briefing schedule and order any response from the United States within two business days, and set the matter for hearing at the earliest possible time practicable for the Court and the parties thereafter.  If summer schedules should mean difficulty setting a hearing promptly, the Tribe respectfully requests that the Court recommend that the NIGC delay enforcement action related to the NOV of July 21, 2009 pending a hearing.   A proposed Order is submitted electronically consistent with Local Rule.

Respectfully submitted this 29th day of July, 2009,


 /s/ Robert E. Prince
Robert E. Prince OBA #7316
Carter & Prince
632 S.W. "D" Avenue
Lawton, OK 73504
580.248.8015
lawyers2@sbcglobal.net


 /s/ Richard J. Grellner
Richard J. Grellner OBA # 15521
Law Office of Richard J. Grellner
439 NW 18th St
Oklahoma City, OK 73103
405-602-0384
rjgrellner@hotmail.com


 /s/ Phillip E. Thompson
Phillip E. Thompson, *Pro Hac Vice*
43709 Mahogany Run Court
Suite 200
Leesburg, VA 20176
703.779.8783
philliptho@comcast.net

Attorneys for Intervenor-Defendant
Fort Sill Apache Tribe of Oklahoma

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2009 I caused a copy of the foregoing document to be submitted by electronic means to the Clerk of Court using the ECF system for filing, thereby serving the Certificate of Service on the ECF registrants who have entered an appearance:

Edmund Clay Goodman
Hobbs Straus Dean & Walker-PORTLAND
806 SW Broadway Ave Suite 900
Portland, OR 97205-3311

William R. Norman, Jr.
James M. Burson
Hobbs Straus Dean & Walker-OKC
117 Park Ave 2nd Fl.
Oklahoma City, OK 73102

John C. Richter
US Attorney's Office-OKC
210 W Park Ave Suite 400
Oklahoma City, OK 73102

Steven K. Mullins
US Attorney's Office-OKC
210 W Park Ave Suite 400
Oklahoma City, OK 73102

Judy A. Copeland
US Attorney's Office-OKC
210 W Park Ave
Suite 400
Oklahoma City, OK 73102

Tom Majors
US Attorney's Office-OKC
210 W Park Ave
Suite 400
Oklahoma City, OK 73102

/s/ Richard J. Grellner
Richard J. Grellner