

# MEMORANDUM

**To:** Philip N. Hogen, Chairman
**From:** Penny J. Coleman, Acting General Counsel
**Re:** The Merits of the Fort Sill Apache Tribe's New Argument
**Date:** April 30, 2009

## Introduction

This opinion supplements the Office of General Counsel's May 19, 2008 opinion and considers the Fort Sill Apache Tribe's (Tribe) new argument that its settlement agreement (Agreement) establishes that the Tribe's government-to-government relationship was terminated as required by 25 C.F.R. § 292.9.

On March 10, 2008, the Tribe submitted a site-specific amended gaming ordinance for the Chairman's consideration. On May 19, 2008, the Tribe withdrew its gaming ordinance from the Chairman's consideration. The Office of General Counsel, however, issued an advisory legal opinion that concluded the site was Indian lands, but not eligible for gaming under IGRA. *See* Memorandum from Penny J. Coleman, Acting General Counsel, NIGC, to Philip N. Hogen, Chairman, NIGC (May 19, 2008). In reaching this decision, the Office of General Counsel reviewed all documents that the Tribe presented and found insufficient evidence to support, among other things, the Tribe's restored lands claim.

However, on September 26, 2008, the Tribe filed a brief containing a new argument to support its claim of restored lands with the U.S. District Court for the Western District of Oklahoma. *See* Brief for Defendant, *Comanche Nation v. United States*, Reply to Opposition to Motion for Enforcement of Agreement of Compromise and Settlement, (W.D. OK 2008) (No. CIV 05-328-F). In 2005, the Comanche Nation sued the United States over a parcel of Comanche land that the United States had put in trust for the Fort Sill Apache Tribe.[1] The Fort Sill Apache Tribe intervened in the

---

[1] On April 2, 1999, the Fort Sill Apache acquired into trust a .53 acre parcel of land that was located in lands of the former Kiowa, Comanche and Apache Reservation in Oklahoma. *Comanche Nation v. United States*, Agreement of Compromise and Settlement Recitals (Agreement), CIV-05-328-F at 1. The Department of Interior approved the trust acquisition without acquiring the written consent of the Comanche Nation. *Id.* The Comanche Nation sought a declaration voiding the trust transfer. *Id.* The parties entered into the Agreement to settle the matter.

litigation. In 2007, the suit was resolved by a settlement agreement. In its September 26, 2008 brief, the Fort Sill Apache Tribe asserted that the advisory legal opinion of the NIGC Office of General Counsel breached its Agreement with the United States by failing to acknowledge the Tribe's restored tribal status allegedly set forth in the Agreement. *Id.* Specifically, the Tribe cited paragraph 7(i) of the Agreement for the proposition that the United States acknowledged that it terminated the federal recognition of the Chiricahua and/or Warm Springs Apache Tribes, to which the Fort Sill Apache Tribe is the successor in interest. As a consequence, the Tribe argued that the advisory legal opinion of the Office of General Counsel was incorrect because it failed to acknowledge the termination of its federal recognition and, thus, the Fort Sill Apache Tribe's restored status. *Id.* at 2.

The Office of General Counsel now considers the Tribe's new argument in light of the presented evidence. This memorandum supplements our May 19, 2008 opinion. We conclude that the Tribe has failed to provide additional evidence, and the presented evidence remains insufficient to support its claim that it is a restored tribe.[2]

## Legal Background

The United States Department of the Interior (DOI) issued regulations interpreting the restored lands exception of the Indian Gaming Regulatory Act, 25 U.S.C. § 2719. Those regulations specifically address the standards to demonstrate the termination of the government-to-government relationship. *See* 25 C.F.R. part 292; 73 Fed. Reg. 29,354. These regulations became effective on August 25, 2008. See 73 Fed. Reg. 35579 (June 24, 2008). The Commission subsequently adopted the regulations. Accordingly, the regulations are applied to this case for the limited purpose of determining whether the Tribe's government-to-government relationship with the United States was terminated.

We note that the Tribe advised us that it did not believe that the new regulations should be used in this analysis. *See* Letter from Jeff Houser, Tribal Chairman, Fort Sill Apache Tribe, to Jo-Ann Shyloski, Associate General Counsel – Litigation and Enforcement, and Esther Dittler, Staff Attorney, National Indian Gaming Commission. We understand and appreciate that concern. The regulations were not intended to disrupt tribal gaming operations that were developed in reliance on the existing caselaw and earlier opinions that were issued. Consequently, we are focusing our analysis on the one and only argument presented by the Tribe and its impact on the Tribe's ability to game on the New Mexico site. We believe that this approach is appropriate because the regulations and the caselaw do not essentially establish different standards for concluding that a tribe had a period of time that it did not have a government-to-government relationship with the federal government. In other words, as described below, the regulatory standard for

---

[2] The Fort Sill Apache Tribe asserts that it was "formally recognized by the Federal government in 1976." *See* Memorandum in Support of Fort Sill Apache Tribal Gaming Commission Luna County, New Mexico Gaming License, 16 (Feb. 22, 2008). As the Tribe may have been recognized after 1934, we understand that the trust status of the Akela Flats property might be impacted by the recent decision in *Carcieri v. Salazar*, 129 S. Ct. 1058 (Feb. 24, 2009). However, we need not address this matter as we conclude that the Tribe may not game on the Akela Flats property.

2

the tribe having "lost its government to government relationship," 25 C.F.R. § 292.9, is not significantly different from the requirement in caselaw that there was a termination of federal recognition.

Under the regulations, a tribe seeking to establish itself as a restored tribe must, among other things, demonstrate that "[t]he tribe at one time was federally recognized" and "[t]he tribe at some later time lost its government-to-government relationship by one of the means specified in § 292.9 . . . ." 25 C.F.R. § 292.7. For a tribe to qualify as having lost its government-to-government relationship under 25 C.F.R. § 292.7, it must show that its government-to-government relationship was terminated by one of the following means:

(a) Legislative termination;

(b) Consistent historical written documentation from the Federal Government effectively stating that it no longer recognized a government-to-government relationship with the tribe or its members or taking action to end the government-to-government relationship; or

(c) Congressional restoration legislation that recognizes the existence of the previous government-to-government relationship.

25 C.F.R. § 292.9.

Section 292.7 of DOI's regulations capture the elements outlined by courts for determining whether a tribe has demonstrated that the federal government terminated its federal recognition and whether such recognition has been restored. For example, the U.S. District Court for the Western District of Michigan stated:

> In order to determine whether the Band meets the restoration exception under [25 U.S.C.] § 2710(b)(1)(B)(iii), the court must first determine whether the Band is a "restored" tribe within the meaning of the provision, and second, whether the land was taken into trust as part of a "restoration" of lands to such restored tribe.

*Grand Traverse Band of Ottawa and Chippewa Indians v. Office of the United States Attorney for the Western District of Michigan,* 198 F. Supp.2d 920, 927 (W.D. MI 2002). For a tribe to establish that it is a restored tribe, it must establish: 1) federal government recognition; 2) withdrawal of recognition; and 3) restoration of recognition. *See Grand Traverse Band of Ottawa and Chippewa Indians v. Office of the U.S. Attorney for the W. Dist. of Mich.,* 369 F.3d 960, 967 (6th Cir. 2004).

The Section 20 regulations build upon the caselaw. As mentioned above, 25 C.F.R. § 292.9 specifies how a tribe qualifies as having its government-to-government relationship terminated. Because the Tribe does not contend the termination of its

3

government-to-government relationship was evidenced by legislative termination or Congressional restoration legislation, we can focus on section 292.9(b) which requires consistent historical written documentation from the federal government effectively stating that it no longer recognizes a government-to-government relationship with the tribe or its members or taking action to end the government-to-government relationship.

## ANALYSIS

We conclude that the Tribe has not provided consistent historical written documentation effectively stating that the federal government no longer recognized a government-to-government relationship with the Tribe or its members or taking action to end the government-to-government relationship.

1. **Paragraph 7(i) of the Agreement and the Tribe's history do not evidence that the Tribe's government-to-government relationship was terminated and fails to support the Tribe's claim that it is a restored tribe**

In this instance, the Tribe argues that it has met its burden to show that it is a restored tribe and relies on two pieces of evidence. On January 9, 2007, the Fort Sill Apache and the Comanche Nation entered into a settlement agreement with the United States concerning the federal government's transfer of Comanche trust land for the benefit of the Fort Sill Apache Tribe. *Comanche Nation*, Agreement of Compromise and Settlement Recitals, CIV-05-328-F at 1-2. The Agreement states:

g) The Fort Sill Apache Tribe is a successor-in-interest to the Chiricahua and Warm Springs Apache Tribes whose aboriginal territory, as defined by the Indian Claims Commission and as affirmed by the United States Court of Claims, includes those parts of Arizona and New Mexico where the United States currently holds land in trust for the benefit of the Fort Sill Apache Tribe. See Fort Sill Apache Tribe v. United States, 19 Ind. Cl. Comm. 212 (1968); Fort Sill Apache Tribe v. United States, 477 F.2d 1360, 201 Ct.Cl. 630 (1973), cert. denied, 416 U.S. 933 (1974).

h) The United States once maintained a government-to-government relationship with the Chiricahua and Warm Springs Apache Tribes, as evidenced by treaties, negotiations with tribal leaders, provision of services to the tribes and tribal members, and other government-to-government relationships clearly identified in numerous legal actions maintained before the Indian Claims Commission, United States Court of Claims, United States District Courts, and the United States Department of Interior Board of Indian Appeals. See e.g., Fort Sill Apache Tribe v. United States, supra, 19 Ind. Cl. Comm. at 212.

4

    i)    The United States does not acknowledge and/or recognize the Chiricahua and/or Warm Springs Apache Tribes as "Federally Recognized Tribes", or as entities "acknowledged to have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes." 70 Fed. Reg. 71194 at 1 (Nov. 25, 2005).

    j)    On or about August 16, 1976, the Commissioner of Indian Affairs formally approved the Constitution of the Fort Sill Apache Tribe, and thereafter the United States acknowledged the Fort Sill Apache Tribe to be a Federally Recognized Tribe, and has maintained a government-to-government relationship with the Fort Sill Apache Tribe since that date. See 70 Fed. Reg. 71194.

*Id.* at 7(g) - (j).

    The Agreement acknowledges that the Tribe is a successor in interest to the Chiricahua and Warm Springs Apache Tribes who once maintained a government-to-government relationship with the United States and this satisfies the first requirement of the restored lands exception. 25 C.F.R § 292.7(a). As we stated in our May 19, 2008 opinion, these stipulations support the view that the Tribe was once recognized as the Chiricahua and Warm Springs Apache Tribes and that the Chiricahua and Warm Springs Apache Tribes were subsequently recognized as the Fort Sill Apache Tribe.

    The Tribe argues that the Agreement shows that the federal government has already acknowledged its restored status. Specifically, the Tribe focuses on the language of paragraph 7(i) as evidence that the federal government acknowledges its status as a successor in interest to tribes once terminated and its status as a restored tribe. *See* Brief for Defendant at 2.

    Further, the Tribe also relies on the history presented to the Federal Court of Claims to support its argument that the federal government terminated the federal recognition from its ancestors, the Chiricahua and Warm Springs Apache, to whom it is a successor in interest. The history presented in the Federal Court of Claims is already set forth in the General Counsel's May 19, 2008 advisory legal opinion. Simply put, the Tribe argues that the Federal Court of Claims acknowledged the termination of federal recognition of the Chiricahua and Warm Springs Apache tribes when it noted that the Chiricahua and Warm Springs Apache were taken as prisoners of war. *Fort Sill Apache Tribe v. United States*, 19 Ind. Cl. Comm. 212, 244-5 (June 28, 1968).

    Based upon these two pieces of evidence, and its new argument, the Fort Sill Apache Tribe argues that the General Counsel's May 19, 2008 advisory legal opinion is incorrect. Upon closer review of the Agreement, we do not agree. These pieces of

evidence remain insufficient to support the Tribe's claim, and the advisory legal opinion's reasoning with this addition remains sound.

As stated in the advisory legal opinion, the Tribe's evidence from the Federal Court of Claims case remains insufficient to support its claim that its government-to-government relationship was terminated. The evidence is insufficient because taking Chiricahua and Warm Springs Apache members as prisoners of war in 1886 did not necessarily constitute the federal government's termination of the Chiricahua and Warm Springs Apaches' federal recognition and a cessation of the government-to-government relationship. In fact, the United States military force's decision to take the Chiricahuas as prisoners of war indicates that the Tribe was still considered a hostile but separate and sovereign entity. Because this history fails to indicate or acknowledge any type of loss of federal recognition, it does not support the Tribe's assertion that the federal government terminated the federal recognition of the Chiricahua and Warm Springs Apache tribes.

Nor does the Tribe's Agreement with the United States and the Comanche Nation constitute consistent historical written documentation from the federal government effectively stating that it no longer recognized a government-to-government relationship with the Chiricahua and Warm Springs Apache tribes or its members or taking action to end the government-to-government relationship. The Agreement provides

> The United States does not acknowledge and/or recognize the Chiricahua and/or Warm Springs Apache Tribes as "Federally Recognized Tribes", or as entities "acknowledged to have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes."

*Comanche Nation*, Agreement of Compromise and Settlement Recitals, CIV-05-328-F at 7(i). While the language of the Agreement acknowledges that the United States does not recognize the Chiricahua and Warm Springs Apache Tribes, this document states the facts as they were on the date the Agreement was entered into. It reflects that the successor tribe, the Fort Sill Apache Tribe is a Federally recognized tribe. In other words, the fact that the Chiricahua or Warm Springs are not presently recognized is not evidence that the federal government terminated the government-to-government relationship within the meaning of 25 C.F.R. § 292.9. It merely evidences that in the present day the Chiricahua and Warm Springs Apache are no longer recognized[3] and does not explain

---

[3] This interpretation is consistent with the U.S. District Court for the Western District of Oklahoma's Order denying the Tribe's motion for Enforcement of Agreement of Compromise and Settlement. The U.S. District Court noted that ". . . it was made abundantly clear to the court that the Chiricahua Tribe and the Warm Springs Apache Tribe are not federally recognized Indian tribes. No such status, with respect to those tribes, has been confirmed by publication in the Federal Register, nor has any such status been memorialized in any list of federally recognized tribes maintained by or at the direction of the Secretary of the Interior or any subordinate official in the Department of the Interior." *See Comanche Nation v. United States* No. CIV 05-328-F (W.D. Okla. Oct. 7, 2008) (order denying motion for Enforcement of Agreement of Compromise and Settlement). The court specifically found "that the Chiricahua Apache and Warm Springs Apache Tribes have not been recognized by the United States of America, the United States

6

why or how its successor, the Fort Sill Apache Tribe, took its place or how or if its successor in interest's recognition or government-to-government relationship was terminated. Because the Tribe has not demonstrated that its government-to-government relationship was terminated, it does not meet the requirements for the restored lands exception under 25 C.F.R. § 292.7.

This analysis is consistent with previous NIGC legal opinions. As explained below, the statute and regulations require evidence of action on the part of the federal government ending or terminating federal recognition. A tribe's attempt to prove the termination of federal recognition has always required greater evidence than the Fort Sill Apache Tribe provided in this case.

For example, the Cowlitz Indian Tribe presented numerous records from the federal government where the government explicitly denied its federal recognition of the Tribe. *See* Memorandum to Philip N. Hogen, Chairman from Penny J. Coleman, Acting General Counsel, Re: Cowlitz Tribe Restored Lands Opinion at 8-9 (Nov. 22, 2005). The Bureau of Indian Affairs refused to discuss enrollment in the Cowlitz Tribe with an individual on the grounds that they did not recognize the Tribe. *Id.* Further, the Department of the Interior represented to Congress that the Cowlitz Tribe was no longer federally recognized. These acts and other documentation represents consistent written documentation from the federal government stating that it no longer recognized a government-to-government relationship with the Tribe or its members, and constitutes action to end the government-to-government relationship.

In contrast, the Karuk Tribe of California presented no evidence of the federal government's termination of recognition to support its restored tribe claim. *See* Letter to Bradley G. Beldsoe Downes, Esq., Dorsey & Whitney LLP from Penny J. Coleman, Acting General Counsel (Oct. 12, 2004). While the federal government appeared to have no dealings with the Tribe for a time, individual members still received benefits from the federal government. *Id.* at 3. Because the Tribe presented no evidence of action by the federal government to terminate recognition, the Office of General Counsel concluded that the Tribe was not restored. *Id.*

In the present matter, the evidence presented by the Fort Sill Apache Tribe is more analogous to the evidence presented by the Karuk Tribe than the Cowlitz Indian Tribe. In support of its claim as a restored tribe, the Cowlitz Indian Tribe presented evidence of an explicit denial of the Tribe. The Karuk Tribe, on the other hand, failed to provide any proof of a termination of recognition. *See* Letter to Bradley Bledsoe Downes from Penny J. Coleman, Acting General Counsel (Oct. 12, 2004). The lack of evidence to support its claim led the Office of General Counsel to find that it was not a restored tribe. *Id.*

---

Department of the Interior, or any subordinate officer or agency thereof." *Id.* Thus, the U.S. District Court's Order is only evidence of the fact that the United States does not recognize the Chiricahua and Warm Springs Apache Tribes, not evidence of the United States' action to end the government-to-government relationship.

The lack of sufficient evidence presented here leads to the same result. In presenting its case for restoration, the Fort Sill Apache Tribe failed to provide evidence of consistent historical written documentation from the federal government effectively stating that it no longer recognized a government-to-government relationship with the Chiricahua and Warm Springs Apache tribes or its members or taking action to end the government-to-government relationship. Without such evidence to support its claim, the Tribe fails to meet the requirements of the restored lands exception.

## Conclusion

The Tribe presented a new argument with the same evidence, challenging the General Counsel's May 19, 2008 advisory legal opinion as incorrect. The Tribe's argument, however, fails to change the previous analysis undertaken by the Office of General Counsel. The Tribe presented no additional evidence to support its claim as a restored tribe. Because the Agreement does not constitute historical written documentation from the federal government effectively stating that it no longer recognizes a government-to-government relationship with the Fort Sill Apache Tribe or its members or take action to end the government-to-government relationship, it cannot support the Tribe's claim that its government-to-government relationship was terminated as required by 25 C.F.R. § 292.9(b). Because the Tribe cannot establish that its government-to-government relationship was terminated, its does not meet the requirements of the restored lands exception. 25 C.F.R. § 292.7. As a consequence, the Akela Flats site, although Indian lands, remains ineligible for gaming under IGRA.