41 Ind. Cl. Comm. 37                                              52

BEFORE THE INDIAN CLAIMS COMMISSION

THE FORT SILL APACHE TRIBE OF              )
  THE STATE OF OKLAHOMA,                    )
                                           )
THE CHIRICAHUA APACHE TRIBE,               )
  ex rel., Sam Haozous, Benedict Johze,    )
  James Kaywaykla, Robert Gooday,          )
  David Chinney,                           )
                                           )
THE WARM SPRINGS APACHE BAND,              )
  ex rel., Sam Haozous, Benedict Johze,    )
  Raymond John Loco,                       )
                                           )
THE CHIRICAHUA APACHE BAND, ex rel.,       )
  Robert Gooday, David Chinney, Casper     )
  Calio,                                   )
                                           )
               Plaintiffs,       )
                                           )
   ·  v.                                   )   Docket No. 182
                                           )
THE UNITED STATES OF AMERICA,              )
                                           )
             Defendant.            )

Decided: October 6, 1977

### FINDINGS OF FACT

    1.  Capacity to Bring Suit.  Plaintiff, the Fort Sill Apache Tribe

of the State of Oklahoma, represents the Chiricahua Apache Tribe, the

Warm Springs Apache Band, and the Chiricahua Apache Band, which together

constitute a single identifiable Apache group having the right and capacity

to bring and maintain the claims herein against the United States under

the Indian Claims Commission Act, 60 Stat. 1049 (1946).

    2.  Loss of Aboriginal Lands; Surrender of Geronimo.  During 1871-1875,

reservations were established by the United States for the Chiricahua

Apaches within their aboriginal homelands in Arizona and New Mexico.
In the year 1876, however, the Government embarked on a program of moving
all Chiricahua Apaches from their ancestral homelands and settling them
on the San Carlos Reservation located outside their homelands.  From time
to time, parties of Chiricahua Apaches fled from the San Carlos Reservation,
returning to their homelands and engaging in hostilities.  The Government
was determined to hold all members of the tribe responsible for the acts
of these insurgent parties.  During 1885 and 1886, it assembled the
Chiricahua Apaches, men, women and children, living on the San Carlos
Reservation, and it waged war against and captured the insurgent groups.
The final surrender of a party of hostile Chiricahua Apaches under Chief
Geronimo took place on September 4, 1886.  Their surrender was "as
prisoners of war to an army in the field."  The Commission has previously
held that September 4, 1886, constituted the date on which the aboriginal
lands of the plaintiffs were taken by the United States.  Fort Sill Apache
Tribe v. United States, Dockets 30, et al., 19 Ind. Cl. Comm. 212, 229,
245 (1968), aff'd, 202 Ct. Cl. 134 (1973); Fort Sill Apache Tribe v.
United States, 201 Ct. Cl. 630, 643 (1973), cert. denied, 416 U.S. 993
(1974) (aff'g, Docket 49, 26 Ind. Cl. Comm. 281 (1971)).

    3.  Commencement of Plaintiffs' Imprisonment.  Upon the surrender of
Geronimo, some 381 Chiricahua Apaches, men, women and children, including
those from the reservation, were seized and transported as prisoners of
war in September and October 1886, to Fort Marion and Fort Pickens,
Florida, where they joined an insurgent group of Chiricahua Apaches

41 Ind. Cl. Comm. 37                                              54

previously captured and transported there and where the Geronimo group
was transported shortly thereafter.  In April of 1887, the Chiricahua
Apaches were transferred to the Mount Vernon barracks in Alabama, where
they remained until September 1894.

 4.  Plaintiffs' Transfer to Fort Sill.  In the Act of February 17,
1879, 20 Stat. 295, 313-14, Congress had inserted a provision expressly
prohibiting the removal of any Apache Indians to the Indian Territory
unless Congress first specifically authorized such removal.

 The Apache prisoners suffered severe hardships during their
confinement in Alabama primarily because of the different climate.  The
War Department decided that it was both humane and necessary to transfer
the Apaches to a location more suitable for them as a permanent home,
and by 1890 had decided that the best site was the Fort Sill Military
Reservation.  Transfer was impossible, however, because of the prohibition
in the above-cited act.  In these circumstances Secretary of War Proctor
reported to Congress on January 13, 1890, as follows:

> If Congress will grant the necessary authority,
> I recommend, therefor, that these Indians be trans-
> ferred to Fort Sill in the Indian Territory, with a
> view to their final settlement on the Kiowa, Comanche
> and Apache Reservation, provided satisfactory negotia-
> tions can be consummated with these confederated tribes
> to that end.  The military reservation of Fort Sill
> comprises 36 square miles and is located within this
> Indian reservation. (Pl. Ex. No. 16, at 4.)

 5.  Congressional Authorization to Settle Apaches at Fort Sill.  During
floor debate in the Senate on House Bill 6373, 53d Cong., 2d Sess., ultimately
enacted as the Act of August 6, 1894, 28 Stat. 233, the following amendment
relating to the Apache prisoners of war was introduced:

41 Ind. Cl. Comm. 37                                                    55

> That the Secretary of War is hereby authorized
> and directed to remove to the Fort Sill Military
> Reservation, Indian Territory, the Apache prisoners
> of war now confined at Mount Vernon Barracks,
> Alabama . . . (26 Cong. Rec. 7367, July 12, 1894,
> Pl. Ex. No. 13).

In an effort to prevent transfer to Fort Sill, this amendment was amended

to read as follows:

> That the Secretary of War is hereby authorized
> and directed to remove to such military reservations
> as he may select, not prohibited by existing law . . .
> (Id.)

This language was further modified in conference and the following

language was finally enacted as part of the Act of August 6, 1894, supra,

at 238:

> That the Secretary of War is hereby authorized
> to remove to such military reservation or reservations
> as he may select, the Indian prisoners of war now
> confined at Mount Vernon Barracks, Alabama, and for
> the purposes of the erection of buildings, purchase
> of draft animals, stock, necessary farming tools, seeds,
> household utensils, and other articles needed for said
> Indians and generally for their support and civiliza-
> tion, the sum of fifteen thousand dollars is hereby
> appropriated, in addition to the sums herein appropria-
> ted, to be expended under the direction of the Secretary
> of War.

6. Kiowa, Comanche and Apache Reservation. The Fort Sill Military

Reservation and the Fort Sill wood reserve were originally part of the

Kiowa, Comanche and Apache Reservation which was established by the

Treaties of October 21, 1867, 15 Stat. 581 and 15 Stat. 589. The

Commission has previously held that the title of the Kiowa, Comanche,

and Kiowa Apache Indians to their reservation was taken by the United

States on June 6, 1900, by the Act of that date, 31 Stat. 672, 678-681.

41 Ind. Cl. Comm. 37

56

See Kiowa, Comanche and Apache Tribes v. United States, Docket 32, 1 Ind.
Cl. Comm. 505 (1951), aff'd, 143 Ct. Cl. 534 (1958). The lands of the
Kiowa, Comanche and Apache Reservation were opened to settlement in 1901.
The original Fort Sill Military Reservation, comprising 23,040 acres,
was created out of the Kiowa, Comanche and Apache Reservation by the
Executive Order of October 7, 1871. The Fort Sill wood reserve, comprising
26,880 acres, was established out of the Kiowa, Comanche and Apache
Reservation by Executive Order of March 2, 1892.

7. War Department Implementation of Congressional Authorization to
Transfer Apaches. Shortly after passage of the Act of August 6, 1894,
supra, the War Department submitted to the Chairman of the House Committee
on Military Affairs a lengthy memorandum describing that department's
position on the resettlement of the Apache prisoners of war as a
consequence of the passage of the Act of August 6, 1894, supra. That
memorandum stated, in pertinent part, as follows:

> . . . legislative authority was given for the
> location of these Indians upon any military reservation
> under the control of the War Department.
>
> In the selection of a future home for them the
> reservations available were very few in number. It was
> deemed impracticable to segregate the band and scatter
> the families. . . . Arizona and New Mexico were out of
> the question. The available reservations of adequate
> area were practically restricted to Fort Riley, in Kansas,
> and Forts Supply, Reno and Sill in the Indian Territory.
>
> The climate of the Indian Territory was thought to
> be the best adapted, and the neighborhood of Fort Sill
> the most desirable, as this post is located upon the
> Kiowa and Comanche Reserve where illicit traders and
> liquor selling is prohibited and prevented . . .

41 Ind. Cl. Comm. 37                                                    57

>           In September of last year [1894] all the
>           Chiricahuas Apaches . . . were removed to Fort Sill,
>           their numbers aggregating 346, and these were
>           established upon the military lands near that
>           post . . . They have now a favorable opportunity
>           for reaching a self-sustaining basis -- a condition
>           that will in all probability be attained in a very
>           few years.

>                      . . .                . . .

>           After very careful consideration of all the
>           facts and circumstances bearing upon the removal of
>           the Apaches, and notwithstanding the fact that the
>           Chairman of the Military Committee of the House of
>           Representatives, who was in possession of only a
>           part of the facts, had in debate, made certain state-
>           ments leading to the conclusion perhaps that the
>           Department would distribute these Indians to several
>           reservations, the Department could find no practocal
>           [sic] solution of the problem, except in the course
>           that was finally adopted of removal of the Geronimo
>           band of Apache prisoners to Ft. Sill, where all the
>           conditions are favorable to a realization of the
>           hope that all who have the public interests at heart
>           shall live to see these Indians so situated that
>           their former pauper status can be terminated, and
>           that they may in a brief period reach a self sus-
>           taining basis.  (Pl. Ex. No. 16, at 5-6, 17.)

In the Annual Report of the Secretary of War for the year 1894, he

reported as follows:

>           Full investigation of all the conditions
>           convinced the Department that the reservation at
>           Fort Sill . . . was best adapted by climate, nature,
>           and extent of land, military garrison, and other
>           considerations for a permanent agricultural settle-
>           ment of these prisoners.  Accordingly, in September,
>           they were moved to Fort Sill, and are being established
>           on military lands, with a garrison entirely adequate
>           to their control and under conditions tending to
>           their self-support and civilization. (Pl. Ex. No. 18,
>           at 27.)

8.  <u>Settlement of Apaches at Fort Sill</u>.  The Apache prisoners arrived
at Fort Sill in October 1894.  They were at first quartered in tents and
encouraged thus to live outside to help alleviate the tuberculosis from
which many of them were suffering.  Over the first two years of their
settlement at Fort Sill, they constructed houses in several small
communities of relatives at various points across the Fort Sill Military
Reservation.

Further funds were appropriated for their "maintenance and support"
as "prisoners of war" by the Acts February 12, 1895, 28 Stat. 654, 658,
and March 16, 1896, 29 Stat. 60, 64.  These acts specifically appropriated
funds "for the purposes of the erection of buildings, purchase of draft
animals, stock, necessary farming tools, seeds, household utensils, and
all other necessary articles absolutely needed for their support and
civilization."  Act of February 12, 1895, <u>supra</u>.

With these appropriated funds, by 1896 cattle and building materials
were purchased, 500 acres of prairie broken and fenced, and a great deal
of planting and harvesting of fruits and vegetables accomplished.

On January 6, 1896, the Secretary of War wrote, in part as follows,
to the Secretary of the Interior:

> . . . It is hoped that at the close of the
> fiscal year 1896-7 there will be no necessity for
> holding these Indians longer in the status of
> prisoners, and that then they can be released as
> such and their control assumed by your Department.
>
> The western end of the Military Reservation of
> Fort Sill, where they are now located, having an area
> of about 25,000 acres, will not, probably, be needed
> for military purposes after the date indicated above,

41 Ind. Cl. Comm. 37                                          59

> and can be turned over for the permanent occupancy
> of these Apaches. It is within this area that they
> are now domiciled. (Pl. Ex. No. 21, at 2-3.)

In his annual report to the Congress for the year 1896, the

Secretary of War described the status of the Apache prisoners of war

in the following terms:

> The title to the lands comprised in the military
> reservation of Fort Sill is in the Kiowa and Comanche
> Indians, and when the military shall have no further
> use for this post the reservation will revert to
> these Indians. The Apaches will then be trespassers
> on these lands, unless meanwhile the title to the
> area occupied by them shall be acquired. I recommend
> that this be done, and that the status of these
> Apaches as prisoners be then terminated. The area
> required for their maintenance is about 36,000 acres.
> Their homes before capture were in Arizona, but it
> is not practicable for them to return there. If
> settled permanently where they now are they will
> become entirely self-sustaining in a very few years.
> If dispossessed from their lands they must be sent
> elsewhere and all work done in their present location
> will be lost to them. (Pl. Ex. No. 27, at 40.)

9. Expansion of the Fort Sill Military Reservation. On February 16

and 17, 1897, representatives of the War Department and the Department of

the Interior met with the chiefs and headmen of the Kiowa, Comanche and

Kiowa Apache Indians. The Government representatives explained that the

Fort Sill Military Reservation then contained slightly more than 23,000

acres and that the Government wished to add to the reservation two

separate tracts totalling 26,987.30 acres. The Indians were told by the

representative of the Department of the Interior that:

> The government don't [sic] intend to take this
> land or to use it for any other purpose except as a
> military reservation and to provide homes for those
> Apache Indians. . . .
>
> If the government ever abandons that country,
> takes the soldiers away and moves those Apaches
> away, why the land comes back to your people,
> unless the government has come to a fair bargain
> with you and satisfied you by paying you the value
> of the land.
>
> The only reason the goverment wants this addition
> is to provide a home for these Apache Indians. . . .
>
> I just want to state plainly a few things so
> that you all will understand it.  Now in the first
> place you don't transfer or give away this land in
> any shape or form.  The government simply holds it
> in trust for those Apaches, that is by signing this
> agreement, for the Apaches and for military purposes.
> When the government wants it then there will be
> another talk and they will establish a price that
> they want to pay for it, then the transfer will be
> made.  (Pl. Ex. No. 29, at 3, 23-4.)

At the conclusion of this council, the chiefs and headmen of the

Kiowa, Comanche and Kiowa Apache tribes executed an agreement on

February 17, 1897, which read, in part, as follows:

> We . . . do willingly agree, having had due
> notice and consideration, to the additions, by
> Executive Order, of the following described portions
> of our reservation to the Military Reservation of
> Fort Sill, Oklahoma, for the permanent settlement
> thereon of the Apache Prisoners of War who are now
> located on the original Fort Sill Military Reservation
> by Act of Congress.  This addition, as well as the
> original military reservation to be used only for
> military purposes and for the permanent settlement
> thereon of the Apache Prisoners of War; a just and
> adequate compensation to be made therefor when the
> surplus land of the remainder of the Kiowa, Comanche
> and Apache reservation shall be purchased by Congress,

> and when no longer used for the above purposes;
> said lands shall revert to the Kiowa, Comanche
> and Apache Indians unless they shall have been
> purchased outright in the meantime by the United
> States. (Pl. Ex. No. 32, at 1.)

Immediately thereafter, on February 26, 1897, President Grover
Cleveland signed an Executive order stating, in pertinent part, as follows:

> In accordance with the agreement signed by the
> representatives of the Kiowa Comanche and Kiowa Apache
> Indians at Anadarko, Okl., February 17th, 1897, the
> following tracts of land located on the Kiowa, Comanche
> and Apache Reservation in the Territory of Oklahoma . . .
> are hereby set apart and added to the military reser-
> vation at Fort Sill, Ok., for exclusive use for military
> purposes and for the permanent location thereon of the
> Apache Prisoners of War.  (Pl. Ex. No. 34.)

10.   Further Expansion of the Fort Sill Military Reservation;

Modification of Boundary of Wood Reserve.   In 1901, 893.07 acres composed

of fractional portions of sections were added to the Fort Sill Military

Reservation at the request of the War Department.   These additions were

made by Executive order of September 20, 1901, "for the use and benefit

of the Apache prisoners of war." (Pl. Ex. No. 42, Def. Ex. No. A-73, at
                                                            1/
309.)

11.   Subsequent Legislative References.   In the Act of March 3, 1901,

31 Stat. 1133, 1173, the following appropriation was made:

---

1/ By Executive order of August 29, 1907, an additional 372.45 acres of
"public lands" were "withdrawn from sale and other disposition and reserved
and set apart for military purposes as a part of the Fort Sill Military
Reservation."  Plaintiffs do not, however, claim that this acreage was part
of the reservation to which they received recognized title since such
recognition is asserted to have occurred earlier.

> Establishment of Apache Prisoners at Fort Sill,
> Oklahoma Territory: For the erection of buildings
> and repairs to same, purchase of draft animals, and
> livestock for breeding purposes, farm and household
> utensils, blacksmith and wheelwright tools, and repairs
> to same, and all other necessary articles absolutely
> needed for the support and maintenance of the Apache
> prisoners of war permanently established at Fort Sill,
> Oklahoma, under control of the War Department, two
> thousand five hundred dollars.

Similar language was also employed in the Appropriation Act of
June 28, 1902, 32 Stat. 419, 467-68, and the Deficiency Appropriation Act
of February 18, 1904, 33 Stat. 15, 26.

12. Contemporaneous Interpretation of 1897 Executive Order. Con-
temporaneous references by ranking officials of the Executive branch to
the Executive Order of February 26, 1897 (finding of fact No. 9, supra)
indicate that these officials interpreted the intent of the Executive
order to be that the Apaches were to have rights of permanent occupancy
to the lands added to the Fort Sill Military Reservation by that order.

In 1901, the Commissioner of Indian Affairs informed the Secretary
of the Interior that:

> . . it has always been the intention to make
> the Fort Sill military reservation the permanent home
> of these Indian prisoners, and sooner or later to
> give them lands in individual allotment.
>
> The reservation was enlarged by Executive Order
> of February 26, 1897, with that special object in view,
> some 27,000 acres being added thereto. (Pl. Ex. No. 43,
> at 2.)

41 Ind. Cl. Comm. 37                                              63

On January 18, 1902, the Secretary of War wrote the Speaker of the

House of Representatives, in part, as follows:

> The object of the extension [by the 1897 Executive
> order], as is stated by the Indian Office to have been
> understood at the time, was for the purpose of perma-
> nently locating the Apache prisoners of war thereon.
> (Pl. Ex. No. 46, at 1.)

On February 6, 1904, the Commissioner of Indian Affairs wrote, in

part, as follows to the Secretary of the Interior:

> . . . the Executive order . . . created an
> Indian reservation for the occupancy and use of the
> Apache Prisoners of War and . . . it would require
> legislation of Congress to divest them of such
> occupancy right.  (Pl. Ex. No. 60, at 6.)

On February 18, 1910, the Secretary of the Interior wrote to the

Chairman of the Senate Committee on Indian Affairs that:

> When the Indians were established at Fort Sill
> they were solemnly promised on the part of the
> Government that the reserve was to be their permanent
> home and that they would not be moved again; and the
> area of the original reservation appears to have been
> nearly doubled for the express purpose of settling
> them there permanently.  (Pl. Ex. No. 69, at 1.)

The same opinion is expressed by the Judge Advocate General of the

Army in a memorandum dated December 23, 1910.  See finding of fact No.

15, infra.

13.  Intentions of the Executive Branch Regarding Settlement of the

Apaches upon the Fort Sill Military Reservation.  During approximately

the first ten years (1894 to 1904) of the Apache prisoners' settlement

at Fort Sill, it was the expressed intention of the Executive branch of

the Government that the Fort Sill Military Reservation was to be the
permanent home for these Indians.  See Pl. Ex. Nos. 16 and 18, quoted in
finding of fact No. 7, supra; Pl. Ex. No. 21, quoted in finding of fact
No. 8, supra.

During the last years of the 19th century, the sole purpose of the
military garrison at Fort Sill was to control and protect the Apache
prisoners and to keep peace between the Indians and neighboring whites.
In 1894, the Secretary of War reported that ". . . in September, they
[the Apache prisoners] were moved to Fort Sill, and are being established
on military lands, with a garrison entirely adequate to their control. . . ."
See Pl. Ex. No. 18, quoted in finding of fact No. 7, supra.  In October 1896,
Captain H. L. Scott, the officer in charge of the Apaches, wrote to the
Adjutant General,

> My instructions regarding [the Apaches] were to
> settle them upon arable land on the military reservation
> of Fort Sill under the control and protection of the
> garrison, to prevent their escape and all access to
> intoxicating liquor. . . .  (Pl. Ex. No. 25, at 1.)

Shortly after Captain Scott's report, a memorandum was directed to the
Adjutant General stating, in part, as follows:

> The Secretary of War directs that the Commanding
> General, Department of Missouri, be sent a letter of
> instructions in substance as follows:
>
> The great importance of securing to the Indian
> Prisoners now at Fort Sill, title to the lands they
> are now occupying, all as pointed out by Captain
> H. L. Scott . . . , has received the careful attention
> of the President, the Secretary of War, the Secretary
> of the Interior and the Commissioner of Indian Affairs.

41 Ind. Cl. Comm. 37                                              65

   . . .                                              . . .

        The Apache Prisoners are established upon the
Military Reservation in pursuance of law, and Congress
has made several special appropriations for their
permanent establishment and support, upon the post-
reservation, these lands not being now required for
any other military purpose.   (Pl. Ex. No. 26, at 1;
emphasis supplied.)

    At the same time, the War Department anticipated that these duties

would soon become unnecessary, and that Fort Sill could then be relinquished

as a military installation.  Plans were made that when the military

reservation was vacated, the Department of the Interior would assume

jurisdiction over the Apaches (at which time the Apaches would lose their

status as prisoners of war) and that eventually the Apaches would receive

individual allotments of the former military lands.  See letter of the

Secretary of War, dated January 6, 1896, to the Secretary of the Interior,

Pl. Ex. No. 21, wherein these intentions are spelled out in detail.

    Throughout these years, government officials with whom the Apaches

were in contact led them to believe that the government intended the

Fort Sill Military Reservation to be their permanent home.  Captain Scott

stated in 1902 that:

        Upon their arrival at Fort Sill they were
informed, under the authority of the War Department,
that if they behaved themselves they would be pro-
tected in their improvements and eventually given
their allotments, . . . .  (Pl. Ex. No. 53, at 1-2.)

Furthermore, in 1901, the Commissioner of Indian Affairs reminded the

Secretary of the Interior that "it has always been the intention to make

41 Ind. Cl. Comm. 37                                          66

the Fort Sill military reservation the permanent home of these Indian

prisoners, and sooner or later to give them lands in individual allotment"

(Pl. Ex. No. 43, at 2). Again, in 1909, the Commissioner informed the

Secretary that "when the Indians were established at Ft. Sill they were

promised on behalf of the Government that that was to be their permanent

home" (Pl. Ex. No. 65, at 2, emphasis supplied).

Thus, the evidence establishes that the intention to settle the

Apache prisoners upon the Fort Sill Military Reservation was shared by

the President, the Secretary of War, the Secretary of the Interior, and

the Commissioner of Indian Affairs.

In several communications to Congress during this period officials

of the Executive branch informed Congress that it was intended to settle

the Apache prisoners permanently upon the Fort Sill Military Reservation.

See e.g., the Reports of the Secretary of War for the years 1894 and 1896,

quoted in findings of fact 7 and 8, supra.

Circumstances, however, mitigated against the transfer of the Apaches

to the jurisdiction of the Department of the Interior. The welfare of

the Apaches was one factor. Officials in both the War and Interior

Departments feared that, without the military, the Apaches would be

inadequately protected against the machinations of the white settlers

who were coming to the Territory as lands opened for settlement in the

first years of the 20th century. Another factor was that within the War

Department the value of Fort Sill for military purposes was being

reconsidered.  See finding of fact No. 14, infra.  Jurisdiction of the

Apaches was never transferred to the Department of the Interior nor were

they released from their formal status as prisoners of war.

        14.  Renewed Utilization of Fort Sill for Military Purposes.  In the

first few years of the 20th century, the army decided that it needed a

large artillery training facility.  In 1905, the army chief of staff

stated in his annual report:

> The reservation at Fort Sill is reported as being
> especially suitable for the station of a full regiment
> of field artillery; this owing to its size, its
> varied terrain, and the availability of the adjoining
> ground belonging to the government, included in the
> Indian reservation, which, without detriment to the
> Indians, can be used for artillery maneuvers.
> (Def. Ex. No. A-72, at 315.)

The first artillery troops arrived at Fort Sill on June 29, 1905.

        During the years between 1905 and 1910, plans were developed within

the army to establish a school of fire for field artillery.  In 1910,

Fort Sill was tentatively selected as the site primarily because of its

size, varied terrain and the fact that several field artillery units

were already stationed there.  It soon became apparent that the continued

presence of the Apache prisoners severely inhibited the use of Fort Sill

for field artillery training.  In 1911, the War Department issued stringent

regulations regarding the conduct of firing on the artillery range at

Fort Sill primarily intended to protect the Apache prisoners.  These

regulations, however, were generally considered to be a temporary solution.

The army's need for Fort Sill as an artillery installation was considered

paramount to the War Department's previous intentions with respect to the interests of the Apache prisoners.

15.  <u>Opinion of the War Department Regarding Status of the Apache Prisoners</u>.  Within the War Department the desirability of utilizing Fort Sill as an artillery installation conflicted with the opinion by some within the department that the Apaches had acquired a legal right to Fort Sill after having been promised that Fort Sill would be their permanent home.  The official position of the War Department represented a compromise.  That position is set forth in a lengthy memorandum, dated December 23, 1910, and issued by the Judge Advocate General of the Army. In that memorandum the Judge Advocate General stated, in part, as follows:

> [The Deficiency Appropriation Act of February 18, 1904, 33 Stat. 26, <u>supra</u>] contains the declaration that the Apache prisoners had been "permanently established at Fort Sill, Oklahoma, under control of the War Department."  This represents the final outcome of several executive and legislative acts had in pursuance of a formal agreement with the Apache Indians themselves, and with the Kiowas and Comanches, in whose territory they were to be established.  It is true that the agreement was not a "treaty" in the sense in which that term is used in the Constitution, but it was a formal obligation entered into with bands of Indians having diverse, and, to some extent, conflicting interests which were finally adjusted by the War Department, and, as so adjusted, were expressly recognized by Congress in an act of constitutional legislation.
>
> The result has been, in the opinion of this office, to create a permanent status for the Apache Indians in the Fort Sill reservation, which can only be removed, as it was created, with the consent of the Indians and the approval of Congress.

        As the condition of fact, as established by
executive and legislative action, have [sic] not
changed, it is believed that an attempt to open any
portion of the reservation for purposes of the allot-
ment of its lands in severalty would be inexpedient
at this time, and legislation to that end should not
be favorably recommended to Congress.

        Since the eastern and western addition to the
original military reservation were [sic] made, it has
been found that the enlarged reservation is in the
highest degree necessary for military purposes in the
training and instruction of the troops, especially of
the field artillery, and in the conduct of joint and
separate camps of maneuvers for practical instruction
in field service.  If the Fort Sill reservation, or
any portion of it were to be abandoned, or diverted to
any other use, the training and efficiency of the troops
would suffer, and it would be found necessary to acquire
a tract of equal size, at a very considerable expense,
for training and maneuver purposes.

        It is therefore recommended that the military
reservation, as added to since the date of its original
establishment, continue in the use to which it was
assigned in the several executive orders which created
it; that the Apache prisoners be maintained there until
a suitable and convenient occasion presents itself for
their removal to another reservation, when the entire
matter should be presented to Congress, with a view
to the transfer of the Apache prisoners, with their
consent, to another reservation, where they can be
furnished with accommodations equal to those which
they now enjoy in the operation of the legislation
hereinbefore cited.  (Pl. Ex. No. 71, at 4-6.)

    16.  Removal of Apaches from Fort Sill.  On February 4, 1910, a bill

was introduced in the Senate providing for the allotment of lands at the
                                        2/
Fort Sill Military Reservation  to the Apaches living there.  This bill

_____

2/ The 26,880 acres constituting the wood reserve had been opened to
settlement by Presidential Proclamation of September 19, 1906, 34 Stat.
3233, issued pursuant to the Act of June 5, 1906, 34 Stat. 213.

Case 5:05-cv-00328-F   Document 116-8   Filed 07/29/09   Page 19 of 20

passed the Senate but died in the House of Representatives. Another bill
was introduced in the House during the same year to remove the Apaches from
Fort Sill and to allot to them lands on another reservation to be selected
by the Secretary of the Interior. The Department of the Interior opposed
this bill on the ground that the Apaches had a right to receive allotments
of the lands at Fort Sill. The latter bill failed to pass either house
of Congress.

The Department of the Interior continued to favor allotment of Fort
Sill to the Apaches but the War Department strongly opposed. Finally, as
part of the Act of August 24, 1912, 37 Stat. 518, 534, appropriating funds
for the Bureau of Indian Affairs, the following legislation was enacted:

> For the relief and settlement of the Apache Indians
> now confined as prisoners of war at Fort Sill Military
> Reservation, Oklahoma, on lands to be selected for
> them by the Secretary of the Interior and the Secretary
> of War, two hundred thousand dollars, to be expended
> under such rules and regulations as the Secretary of
> the Interior and the Secretary of War may prescribe.

Pursuant to this act, 163 Apaches left the Fort Sill Military
Reservation on April 2, 1913, for the Mescalero Reservation in New Mexico.
Seventy-six other Apaches elected to remain in Oklahoma and received
allotments purchased for them. The last Apache prisoners were removed
from the Fort Sill Military Reservation on March 7, 1914.

## CONCLUSIONS OF LAW

1. The plaintiffs acquired Executive order title, compensable under
section 2 of the Indian Claims Commission Act, 60 Stat. 1049, 1050 (1946),

to 26,987.30 acres of land added to the Fort Sill Military Reservation by
the Executive Order of February 26, 1897, and to 893.07 acres of land
added to the Fort Sill Military Reservation by the Executive Order of
September 20, 1901.

2.   The plaintiffs were divested of title to the above-described
lands on August 24, 1912, by virtue of the Act of that date, 37 Stat.
518, 534.

Jerome K. Kuykendall, Chairman

John T. Vance, Commissioner

Richard W. Yarborough, Commissioner

Margaret H. Pierce, Commissioner

Brantley Blue, Commissioner