1. Decision Handed Down on Colorado River Indian Tribes vs. National Indian Gaming Commission

**For Immediate Release** ~ *August 30, 2005*
**Contact:** Shawn Pensoneau ~ (202) 632-7003

*Washington, DC* — The National Indian Gaming Commission ("NIGC" or "Commission") last week received an adverse decision in U.S. District Court for the District of Columbia, which found that the Colorado River Indian Tribes ("CRIT" or "Tribe") could not be penalized for denying NIGC access to monitor the Tribe's compliance with NIGC's Minimum Internal Control Standards (MICS) for Class III gaming.

The NIGC adopted and implemented its MICS in 1999, which specify with considerable detail minimum practices tribes must follow when conducting Class II and III gaming. The case arose in 2001, during an audit of CRIT's Class II and Class III gaming operation at the Blue Water Casino. The Tribe challenged NIGC's authority over Class III gaming and denied the NIGC access to Class III gaming records. The NIGC Chairman levied a Notice of Violation on the Tribe, followed by a Civil Fine Assessment. Both the Notice of Violation and Civil Fine Assessment were overturned in the District Court decision.

In deciding that Congress did not intend to give the NIGC the authority to issue Minimum Internal Control Standards (MICS) for Class III gaming, U.S. District Court Judge John D. Bates expressly cautioned that "this opinion should not be read to hold that the NIGC will never be able to audit a Class III gaming operation, or that the NIGC may not penalize a tribe that resists a valid audit."

NIGC Chairman Phil Hogen said "after careful analysis of this decision, the NIGC continues to believe IGRA intends a regulatory role for the Commission with respect to Class II gaming operations and a regulatory oversight role with respect to Class III gaming operations. Considering that the NIGC is charged under IGRA with protecting the interests of tribal gaming operations and the gaming public, we must construe the *Colorado River Indian Tribe* decision narrowly, and expect that future developments will eventually influence the scope of NIGC's Class III role. We take this view because experience has clearly shown that the NIGC MICS have been one of the most effective regulatory tools for both the NIGC and tribes to ensure the integrity of tribal gaming operations and to protect their gaming assets."

Chairman Hogen stated in a letter to tribes "it is important to focus on what the court did and did not do in this case. What it *did* do was hold that the NIGC couldn't penalize the Colorado River Indian Tribes for resisting the NIGC's attempt to conduct an audit of its Class III gaming. What it *did not* do was to enjoin the NIGC from applying its MICS on Class III gaming elsewhere, or from conducting audits to monitor tribal compliance with the MICS."

The NIGC disagrees with the CRIT decision. Accordingly, beyond its dealings with the Colorado River Indian Tribes, and until the Commission revises its regulations or a court of competent jurisdiction orders changes in the scope of its MICS regulations, it will continue to conduct business as usual with current MICS audits and enforcement actions.

*The NIGC is an independent regulatory agency established within the Department of the Interior pursuant to the Indian Gaming Regulatory Act of 1988.*