# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **Comanche Nation, Oklahoma**, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-05-328-F |
| | ) | |
| **United States of America** *et al.*, | ) | |
|    Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO FORT SILL APACHE TRIBE OF OKLAHOMA'S SECOND MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT

### INTRODUCTION

The Ft. Sill Apache Tribe of Oklahoma ("Tribe") claims that the National Indian Gaming Commission ("NIGC") Chairman, by issuing a Notice of Violation ("NOV") for gaming on lands in New Mexico ineligible for gaming under the Indian Gaming Regulatory Act, violated a recital in a settlement agreement in this case. But NIGC has absolutely no affirmative obligations under the settlement agreement and therefore could not breach the agreement in the way suggested by the Tribe.[1] Nonetheless, the Tribe is attempting to morph a single recital in the settlement agreement about a casino in Lawton, Oklahoma, into a vehicle to justify the existence of its New Mexico casino.

---

[1] The NIGC is not a named defendant in this lawsuit, but is only a party to this litigation in the broadest sense as an agency of the United States. The settlement agreement was between four specific parties: the Comanche Nation, the Ft. Sill Apache Tribe, the Bureau of Indian Affairs (Department of Interior), and the United States.

The Tribe contends that the NIGC Chairman, by issuing an NOV that adopted the conclusions and reasoning of two prior legal advisory opinions, violated a recital in the settlement agreement. But these actions – the NOV and the advisory opinions – are not final agency actions subject to suit. Therefore, NIGC could not have possibly violated the Lawton Casino settlement agreement because it has not taken any final action yet. Accordingly, for this reason alone, the Tribe's second motion for enforcement should be denied.

Even looking past these issues, however, what the Tribe claims is not a violation of the terms of the Lawton Casino settlement agreement, but a disagreement over a mere recital in that agreement. The Tribe thinks the recital in the settlement agreement gives it a green light to game in New Mexico. The NIGC Chairman disagrees and has issued an NOV to the Tribe. But regardless of who is right and who is wrong, the simple disagreement over the legal effect of a recital in an unrelated case cannot be construed as a breach of the settlement agreement. NIGC has taken no action that could constitute a breach.

For these reasons, the Federal Defendants respectfully request that this motion be denied.

## FACTS

### I. The underlying lawsuit: *Comanche Nation v. United States* [2]

In 1999, the Department of the Interior ("DOI") took about a half acre of land into trust for the Tribe in Lawton, Oklahoma. The Comanche Nation, who operated the "Comanche Nation Casino" in Lawton next door to the trust land, sued to stop the transaction because

---

[2] These facts are laid out at DKT #81-1: the Agreement of Compromise and Settlement.

they did not want the Tribe to open a competing casino. The Comanche Nation argued that because the land was within an original Comanche Allotment, DOI needed to get the permission of the Comanche Nation before taking the land into trust. In 2007, the parties – the Department of Interior-Bureau of Indian Affairs, the Comanche Nation, the Ft. Sill Apache Tribe, and the United States – entered into an Agreement of Compromise and Settlement. The Comanche Nation agreed to dismiss the lawsuit and not to exercise jurisdiction over the Tribe's half-acre; the Tribe agreed to abandon pending applications for trust transfers within the original Comanche Allotment; and the United States agreed to a process for taking land into trust on the Comanche Allotment in the future. The agreement did not impose any obligations on NIGC, who was not involved in the settlement.

The Tribe's current motion has nothing to do with the original Comanche Allotment or any casinos in Lawton. In fact, the Tribe's current motion has nothing to do with Oklahoma. It has to do with a casino in New Mexico.

**II.     The Tribe's attempts to open a casino in New Mexico**

The story of the Tribe's New Mexico casino starts back in 2002, when the DOI took land into trust for the Tribe in Deming, New Mexico, at a location known as "Akela Flats." On January 16, 2008, the Chairman of the Tribe informed NIGC that the Tribe intended to open a casino on the trust land at Akela Flats and submitted a site-specific ordinance for the Chairman to review and approve. *See* 25 U.S.C. § 2710. Because the ordinance was site specific, the Chairman had to determine whether the land described in the ordinance (the New Mexico parcel) constituted "Indian Lands" under the Indian Gaming Regulatory Act

("IGRA"). For that purpose, in May 2008, NIGC's Office of General Counsel prepared a legal opinion, which stated that IGRA did not authorize gaming at that location. (DKT #116-3) Before the Chairman could disapprove the ordinance, the Tribe withdrew it.

The Tribe challenged that May 2008 legal advisory opinion in this Court, contending that the legal opinion violated the recitals in the settlement agreement. (DKT #102) After two hearings on the matter, the Court denied the Tribe's motion, finding that the legal opinion did not represent the official position of the agency. (Order, October 7, 2008, DKT #115, pg. 4)

### III.    The second motion to enforce the settlement agreement

On July 21, 2009, the NIGC Chairman issued an NOV to the Tribe on the grounds that the Tribe is gaming in New Mexico on a parcel that is ineligible for gaming under IGRA. (DKT #116-7) In the NOV, the Chairman adopted the reasoning and conclusions of the May 2008 legal advisory opinion, as well as a second opinion ("addendum") from April 2009. The second opinion (April 2009) further developed the earlier opinion (May 2008) to address whether the Tribe can game on Akela Flats under IGRA's "restored lands" exception. *See* 25 U.S.C. § 2719.

The NOV explains that the Tribe acquired its parcel in New Mexico into trust in 2002. Therefore, to be eligible for gaming under IGRA, the Tribe must show that this after-acquired trust land meets one of the exceptions in 25 U.S.C. § 2719.

One of these § 2719 exceptions is the "restored lands" exception. Under this exception, a tribe may game on lands "taken into trust as part of — the restoration of lands for an Indian

tribe that is restored to federal recognition." 25 U.S.C. § 2719(b)(1)(B). To make a showing under this exception, a Tribe must produce documentation proving that it was recognized at one time, then it lost its recognition, and has now been restored to federal recognition. *See Grand Traverse Band of Ottawa and Chippewa Indians v. Office of the U.S. Attorney for the W. Dist. Of Mich.*, 369 F.3d 960, 967 (6th Cir. 2004). In the NOV, the NIGC Chairman found that the Tribe did not provide evidence that it or its successors lost status as a recognized tribe. Therefore, the Chairman concluded that the Tribe was not eligible to game on the New Mexico parcel under the "restored lands" exception.

Instead of appealing the NOV to the full Commission as provided by NIGC regulations (and explained in the NOV itself, *see* ¶ 7), the Tribe filed a motion in this Court. *See* 25 C.F.R. § 577. The Tribe does not claim that NIGC did something it promised not to do, or failed to do something that it promised to do. Rather, the Tribe claims that NIGC violated a recital in the settlement agreement. This recital contains no promises and no representations that NIGC will take any action concerning the recital. The relevant recital simply states:

> The United States does not acknowledge and/or recognize the Chiricahua and/or Warm Springs Apache Tribes as "Federally Recognized Tribes", or as entities "acknowledge to have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes." [citation omitted]

(Settlement Agreement, ¶ 7(i))  The Tribe claims that this paragraph really means, in essence, that the Tribe is a restored tribe because its predecessor tribes are not presently recognized. Therefore, by finding that the Tribe was not a "restored" tribe in the NOV and the legal advisory opinions, NIGC has somehow violated this recital in the settlement agreement.

The Federal Defendants respectfully submit that this Court is not the appropriate forum in this dispute.

## ARGUMENT

District courts have no inherent power to enforce settlement agreements entered into by parties litigating before them. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378 (1994). But if a district court explicitly retains jurisdiction over the settlement agreement, then "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* at 381. This Court retained jurisdiction over the settlement agreement. (DKT # 82)  The question presented here is whether NIGC breached the agreement and therefore violated the order.

### I. NIGC did not violate the order because it has not taken any final agency action

NIGC did not violate the settlement agreement because there has not been a final agency action in this case. The Tribe bears the burden of demonstrating that the challenged agency action is final. *Miami Tribe of Oklahoma v. U.S.,* No. 05-3085, 198 Fed. Appx. 686, *4 (10th Cir. 2006).

The legal advisory opinions, like the ones the Chairman adopted in his NOV, are not final agency action. Courts have repeatedly made similar holdings concerning agency legal

opinions and other memoranda. *See Miami Tribe of Oklahoma,* 198 Fed. Appx. 686, *4 (DOI opinion letter not a final agency action); *United States v. 126 Megamania Gambling Devices*, 231 F.3d 713, 719 (10th Cir. 2002) *rev'd on other grounds* (opinion letters are "informal pronouncements" that are non-binding agency interpretations); *see also Cheyenne-Arapaho Gaming Comm'n v. NIGC*, 214 F. Supp. 2d 1155, 1168 (N.D. Okla. 2002) ("advisory letter in this case does not initiate or threaten enforcement and serves simply compliance advice"); *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 646 (6th Cir. 2004) ("Having no direct, binding effect on Air Brake and having no legal consequences for Air Brake by virtue of the deference courts might give to them, the Chief Counsel's letters are not final agency action under the APA."); *City of San Diego v. Whitman*, 242 F.3d 1097, 1101 (9th Cir.2001) (EPA letter not final agency action because the action did not mark the "consummation" of the agency's decision making process.)

Likewise, the NOV is not a final agency action. The NOV may be appealed to the full Commission. 25 C.F.R. § 577.1. Only after final agency action by the Commission may there be judicial review. *See* 25 USC § 2713(c). Therefore, the NOV is an intermediate decision, not a final agency action. *In re: Sac & Fox Tribe of the Mississippi in Iowa*, 340 F.3d 749, 756 (8th Cir. 2003) ("The IGRA by its express terms makes the actions of the Chairman in issuing an NOV or temporary closure order preliminary and intermediate.")

The Tribe has not alleged that any final agency actions breached the settlement agreement. The Tribe simply argues that the NOV and the advisory opinions breach, or in their words "violate," the settlement agreement. But the NOV is an intermediate decision:

it is not made by the Commission and is therefore not final agency action suitable for appeal to federal district court. *See* 25 U.S.C. § 2713(c); 25 U.S.C. § 2714 ("Decisions made by the Commission pursuant to sections 2710, 2711, 2712, and 2713 of this title shall be final agency decisions...."); 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938) ("[T]he long settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.").[3] Moreover, as explained above and as recognized by this Court, legal advisory opinions are not agency action.

Because the Chairman's NOV is not final agency action, it could be reversed or otherwise modified by the full Commission on appeal. 25 C.F.R. § 577. "Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise ... [and] leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary." *FTC v. Standard Oil*, 449 U.S. 232, 242 (1980). In the same way, judicial intervention in this case is

---

[3]IGRA only provides for judicial review for final Commission decisions: 25 U.S.C. §§ 2710 (decisions on tribal gaming ordinances), 2711 (decisions on management contracts), 2712 (review of existing ordinances and contracts), 2713 (civil penalties). The "implied corollary of section 2714 is that other agency actions are not final and thus not reviewable." *Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan v. Ashcroft*, 360 F. Supp. 2d 64, 67 (D.D.C. 2004) (internal quotations and citations omitted). Here, Plaintiff's claims do not fall within any of these statutory categories. *See generally Cheyenne-Arapaho*, 214 F. Supp. 2d at 1168 (discussing preliminary, procedural, and non-final actions of NIGC).

unnecessary. The NOV was issued and the Tribe has a right to appeal. No final orders have been issued; therefore, even taking the Tribe's allegations as true, no breach of the settlement agreement could have occurred.[4]

## II. The Tribe has not shown that NIGC breached the settlement agreement

Even assuming that there has been some sort of final agency action in this case, which there has not, the Tribe cannot show that the complained of activities "breach" or otherwise "violate" the settlement agreement. "A breach of contract is a material failure of performance of a duty arising under or imposed by agreement." *Angier v. Mathews Exploration Corp.*, 905 P.2d 826, 831, n.2 (Okla. App.1995). A party breaches a contract by "failing to perform one's own promise." BLACK'S LAW DICTIONARY, Seventh Edition, p. 182 (1999); BLACK'S LAW DICTIONARY, Sixth Edition, p. 188 (1990) (A "breach" of an agreement means a "failure, without legal excuse, to perform any promise which forms the whole or part of a contract.")

The Tribe alleges NIGC breached Paragraph 7(i) of the Settlement Agreement. This paragraph is a recital. This paragraph explains:

---

[4]The Tribe obviously understands the importance of exhaustion of administrative remedies, as it has successfully argued the importance of exhaustion in briefs before this Court. *See Hankins v. Ft. Sill Apache Tribe*, No. CIV-03-1191-L, DKT #12l, pgs. 19-20 (W.D. Okla. 2003) ("The doctrine of exhaustion of administrative remedies allows the administrative agency charged with applying rules and regulations 'to develop the necessary factual background on which to decide the case, giving the agency a chance to apply its expertise or discretion' and possible eliminates the 'need for the court to intervene.' *Franks v. Nimmo*, 683 F.2d 1290, 1294 (10th Cir. 1982).") If the administrative process was allowed to run its course, it may "eliminate the need for the court to intervene."

> The United States does not acknowledge and/or recognize the Chiricahua and/or Warm Springs Apache Tribes as "Federally Recognized Tribes", or as entities "acknowledge to have the immunities and privileges available to other federally acknowledged Indian tribes by virtue of their government-to-government relationship with the United States as well as the responsibilities, powers, limitations and obligations of such tribes." [citation omitted]

(Settlement Agreement, ¶ 7(i))  This paragraph is simply a factual statement.  The Paragraph explains that the Tribe's predecessors – the Chiricahua and the Warm Springs Apaches – are not "federally recognized" tribes.  No one disagrees with this statement.  The NIGC Chairman agrees; DOI agrees; the Tribe agrees.

But the Tribe takes this language several steps further and says that what the provision *really* means is that these predecessor tribes must have been "terminated" sometime in the past.  And if these tribes have been terminated, according to the Tribe, then that means the Tribe has been restored.  And if the Tribe has been restored, as it claims, then the Tribe can game on Akela Flats in New Mexico.  This is not a description of a breach; this is simply the government's refusal to engage in the Tribe's phantasmagoric legal arguments inexorably leading from an innocuous statement in the *Comanche* settlement agreement to a tribal bingo parlor somewhere in New Mexico.[5]

---

[5] The Tribe's liberal interpretation of this recital also runs afoul of the agreement's merger clause, which states that the agreement "sets forth the entire agreement and understanding between the parties on the subject matter hereof and merges all prior discussions and negotiations between and among them." (Settlement Agreement, ¶ 10)

A mere belief about the legal implications of a recital in a contract is not a breach of the contract. It is well-settled that recitals such as these, "cannot create any right beyond those arising from the operative terms of the document." *Grynberg v. F.E.R.C.*, 71 F.3d 413, 416 (D.C. Cir. 1995) (quotations and citations omitted); *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985); *Genovese Drug Stores v. Connecticut Packing Co.*, 732 F.2d 286, 291 (2d Cir. 1984) ("recitals ... cannot control the clearly expressed stipulations of the parties; and where the recitals are broader than the contract stipulations, the former will not extend the latter."); *GHH Invests., LLC v. Chesterfield Mgmt., Assocs.*, 262 S.W.3d 687, 693 (Mo. Ct. App. 2008) ("recitals are not strictly a part of the contract because they do not impose contractual duties on the parties"); *Chies v. Highland Bank*, No. C8-00-1630, 2001 WL 214693, *1 (Minn. App. 2001) ("The recital is not part of the contractual obligations assumed by the terms thereof.")

The key to a breach of contract claim is the existence of a "breach."[6] The Tribe has not pointed to a breach; the Tribe has pointed to a recital. The Tribe complains about the NIGC's "analysis" (Tribe's Br. at 4) and the "fundamental premise" of the NOV (Tribe's Br. at 6). But NIGC is not doing anything that is prohibited by the contract; and NIGC is not refusing to do anything required by a contract. NIGC has not broken any promise in the

---

[6] The Tribe also alleges that the NIGC may have violated a "Memorandum of Agreement." This MOU is not properly before the Court and the Tribe has not done anything to invoke this Court's jurisdiction over this agreement.

settlement agreement. Therefore, there can be no breach or "violation," as alleged by the Tribe.

## CONCLUSION

The Tribe seeks to invoke this Court's continuing jurisdiction over this case's *Comanche Nation* settlement agreement. In doing so, the Tribe alleges a "violation" of that agreement. But upon closer investigation, the Tribe is not really saying that NIGC breached or violated the agreement. The Tribe is arguing that the NIGC Chairman (who has no affirmative obligations under the agreement) disagrees with a series of premises that the Tribe believes logically flow from a single recital in the Lawton Casino settlement agreement and allegedly affect a casino in New Mexico. But first of all, NIGC has not taken any final agency action yet, and so there can be no violation at this point subject to judicial challenge. And secondly, it is not a violation of an agreement to disagree about the legal effects of a recital in a completely unrelated case.

For these reasons, the Federal Defendants respectfully request that the Tribe's motion be denied.

ELECTRONIC CASE FILING

>JOHN C. RICHTER
>UNITED STATES ATTORNEY
>
>*s/ Daniel P. Lennington*
>*s/ Steven K. Mullins, Civil Chief*
>
>ASSISTANT U.S. ATTORNEYS
>
>United States Attorney's Office
>Western District of Oklahoma

>210 Park Avenue, Suite 400
>Oklahoma City, OK 73102
>(405) 553-8700 - (fax) 553-8885
>Daniel.Lennington@usdoj.gov

### CERTIFICATE OF SERVICE

On August 12, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System. Based on the electronic records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants: Edmund Clay Goodman, James Burson, William Norman, Phillip Thompson, John Racin, Rick Grellner, Robert Prince.

>*s/ Daniel P. Lennington*
>Assistant U.S. Attorney